Opinion issued December 17, 2009




 


 

 






In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-08-00261-CR

____________


JAMES DOUGLAS HARRIS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 77th District Court

Limestone County, Texas

Trial Court Cause No. 10-960-A







MEMORANDUM OPINION

 A jury convicted appellant, James Douglas Harris, of aggravated perjury, and
the trial court assessed punishment at 34 years in prison. See Tex. Penal Code Ann.
§§ 37.02, 37.03 (Vernon 2003). In seven issues, appellant contents that: (1) the
evidence supporting his conviction is legally insufficient; (2) the evidence supporting
his conviction is factually insufficient; (3) the offense is barred by the statute of
limitations; (4) the trial court erred by denying his motion to dismiss alleging a
violation of his right to a speedy trial; (5) his trial attorney's failure to object to
privileged statements amounted to ineffective assistance of counsel; (6) his trial
attorney provided ineffective assistance because she did not have a firm grasp of the
facts and law, and failed to use evidence that would have supported appellant's
defense; and (7) the trial court erred in cumulating his sentence where the oral
pronouncement failed to include the cause number, charge, date or sentence. We
affirm.

Background


 On May 29, 2002, appellant pleaded guilty to the offense of burglary of a
building and was convicted by the 77th District Court of Limestone County, Texas. 
The court assessed punishment at ten years in prison but probated the sentence and
placed appellant on probation for a period of ten years. The court ordered appellant
to abide by certain terms during his probation, including meeting with his probation
officer on March 3, 2003. Appellant failed to meet with his probation officer on
March 3, and the State filed a motion to revoke probation on March 4, 2003, listing
several violations of the terms of probation including the failure to report. 

 On March 30, 2003, appellant was arrested in Dallas County for a traffic
violation, failure to identify, and evading arrest. Appellant remained in Dallas
County jail on those charges until he was released to Freestone County on April 23,
2003. The Dallas County charges were ultimately dismissed.

 Probation Revocation Hearing

 On June 26, 2003, a hearing was held on the motion to revoke probation in
Limestone County. At that hearing, appellant testified that he was unable to report
to his probation officer on March 3, 2003 because he had been arrested in Dallas
County on March 2, 2003. Appellant said he remained in custody in Dallas County
until he was released to Freestone County on April 23, 2003. Appellant offered jail
records, which he claimed were from Dallas County, as proof of his incarceration. 
Specifically, he offered (1) a release receipt from Dallas County Jail, (2) a book-in
slip from Dallas County Jail, and (3) a Dallas County Sheriff's "Property Inventory
at Time of Book-In" receipt. Appellant testified that the documents were true and
correct copies of the documents as they were given to him by "law enforcement
people." During the hearing, questions arose concerning the veracity and authenticity
of the documents that appellant produced, particularly the "Property Inventory at the
Time of Book-In" receipt. (1)

 Both defendant's and the state's attorneys, as well as the judge, noticed that the
date on the book-in receipt appeared to have been altered. The prosecutor took
appellant on voir dire to question him about the documents. During questioning,
appellant maintained that he had been in custody on March 3, 2003. Appellant
elaborated by explaining he was arrested on March 2, 2003, but due to a hand injury
sustained before being arrested, he was taken to Parkland Hospital first and was not
booked into jail until the next morning--March 3, 2003. The prosecutor noticed that
some of appellant's documents had "for the court" written and highlighted at the top. 
Appellant admitted he had added and highlighted this phrase.

 The prosecutor mentioned that it would be easy for the court to verify the date
of appellant's arrest. After the judge reviewed the documents, she agreed that
verification was necessary due to the appearance of the documents. The court
allowed a ten minute recess. The prosecutor attempted to obtain verification from
Freestone County, but the office had closed for the evening. As an alternative, the
prosecutor had his assistant run appellant's criminal history, which would show the
date of arrest. While the court waited for verification, the prosecutor continued to
question appellant, who again claimed that he was in jail in Dallas County for a
month an a half from March 3, 2003 until he was released to Freestone County on
April 23, 2003.

 Once the documents had been obtained from Dallas County and produced by
the State, it was confirmed that the documents had been altered. The documents
obtained from Dallas County reflected that the date of appellant's arrest was March
30, 2003, confirming that the documents offered by appellant had the "30" changed
to "3."

 Even after his testimony and the documents were called into question, appellant
repeated his affirmative false statements and denied altering the documents. After
being confronted with the truth, appellant finally claimed his memory may have been
faulty. Appellant stated, "Tell you what, I know what - I know that date that it was
- it was a Saturday. The date, whatever that fell on, it was a Saturday . . . It was a
Saturday. I know for sure, so you can check." When the prosecutor asked him again
"and you're sure it was March the 3rd not March the 30th," appellant responded, "No,
I didn't even actually - I don't know."

 Aggravated Perjury Charges

 On June 15, 2004, the State brought an indictment against appellant for
aggravated perjury based on his testimony at the revocation hearing. Plea
negotiations followed but ended unsuccessfully on or around April 12, 2006. A
special prosecutor was assigned to the case because of the prosecutor's standing as
a witness, and a new indictment for aggravated perjury was brought against appellant
on April 19, 2006. The second indictment was brought after the statute of limitations
for the offense had run. The second indictment did not allege tolling facts or mention
the first indictment. However, no objection was made alleging the defense of statute
of limitations, and appellant was tried on the second indictment.

 Perjury Trial

 The perjury trial was held on August 14 and 15, 2006. During the State's case,
portions of the revocation hearing were read and admitted into evidence. The State
presented evidence that appellant had given false testimony under oath that he was
arrested in Dallas County March 2, 2003 and was in jail for a month and a half. The
State also presented evidence that appellant testified at the hearing that his exhibits
were true and correct copies of documents as he received them. 

 The State called Officer Michael Dominguez, the arresting officer from Dallas
County. The Officer testified that appellant was arrested on March 30, 2003, and he
specifically remembered arresting appellant. Officer Dominguez identified certified
copies of records from Dallas County, including (1) a booking information sheet
showing the arrest date as March 30, 2003, (2) a document from the Dallas County
Sheriff's Department showing the charge date as March 30, 2003, and (3) a Dallas
County Sheriff's "Property Inventory at Time of Book-In" receipt showing March 30,
2003. The State also offered the altered copies of the documents that appellant
produced at the revocation proceeding. The jury was able to compare the certified
copies with appellant's copies. 

 The State called the prosecutor, defense attorney, and judge from the
revocation proceeding to testify at the perjury trial. Each testified that the date of
arrest was material to the revocation hearing and that appellant had testified under
oath at that official proceeding. In addition, the judge who had presided over the
revocation hearing testified that it was apparent the court was going to find out
whether or not the documents were altered before appellant made the statement he
claimed was a retraction.

 Appellant pointed out various errors in Dallas County's records that were
immaterial to the case, arguing that the records were filled with "human errors" and
appellant was not to blame for the discrepancies regarding the date of arrest. While
the other discrepancies existed in all copies of the documents, the March 3, 2003 date
of arrest was only in appellant's copies, showing that appellant's copies had been
altered.

 A jury found appellant guilty of aggravated perjury, and the court assessed a
sentence of 34 years in prison, to run consecutively with appellant's primary sentence
resulting from the revocation of his probation.

Analysis

A. Sufficiency of the Evidence

 In his first two issues, appellant contends that the evidence is legally and
factually insufficient to support his conviction for aggravated perjury. Specifically,
appellant argues that his conviction should be reversed because he "clearly retracted
his testimony when he became aware that the date on the document he was relying on
was not the correct day of the week." 

 1. Standard of Review

 In our legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and ask whether any rational trier of fact could have found
the crime's essential elements beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); Laster v. State, 275 S.W.3d 512, 517
(Tex. Crim. App. 2009). The standard is the same for both direct and circumstantial
evidence cases. Laster, 275 S.W.3d at 517-18. We do not resolve any conflict of
fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact. See Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim.
App. 1999).

 In our factual-sufficiency review, we view all of the evidence in a neutral light. 
Laster, 275 S.W.3d at 518. We will set aside the verdict only if (1) the evidence is
so weak that the verdict is clearly wrong and manifestly unjust or (2) the proof of
guilt is against the great weight and preponderance of the evidence. Johnson v. State,
23 S.W.3d 1, 11 (Tex. Crim. App. 2000); see Laster, 275 S.W.3d at 518. Under the
first prong of Johnson, we cannot conclude that a conviction is "clearly wrong" or
"manifestly unjust" simply because, on the quantum of evidence admitted, we would
have voted to acquit had we been on the jury. Watson v. State, 204 S.W.3d 404, 417
(Tex. Crim. App. 2006). Under the second prong of Johnson, we also cannot declare
that a conflict in the evidence justifies a new trial simply because we disagree with
the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury's verdict. Id. In our
factual-sufficiency review, we must also discuss the evidence that, according to
appellant, most undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

 The jury is the ultimate judge of credibility. Lancon v. State, 253 S.W.3d 699,
705 (Tex. Crim. App. 2008); see Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon
2007), art. 38.04 (Vernon 1984). The fact-finder alone determines the weight to be
to given contradictory testimonial evidence because that determination depends on
the fact-finder's evaluation of credibility and demeanor. Lancon, 253 S.W.3d at 706.
The fact-finder may choose to believe all, some, or none of the testimony presented. 
Id. at 707.

 2. Elements of Aggravated Perjury

 To establish aggravated perjury, the State had the burden to prove beyond a
reasonable doubt that the appellant (1) with intent to deceive and (2) with knowledge
of the statement's meaning (3) made a false statement under oath (4) that was
required or authorized by law to be made under oath (5) in connection with an official
proceeding and that (6) the false statement was material. Tex. Penal Code Ann. §§
37.02, 37.03. In a prosecution for aggravated perjury, "intent to deceive" may be
inferred from the circumstances. Bodmer v. State, 161 S.W.3d 9, 12 (Tex.
App.--Houston [14th Dist.] 2004, no pet.). A statement is material if it could have
affected the course or outcome of the official proceeding. Tex. Penal Code Ann.
§ 37.04(a) (Vernon 2003); Mitchell v. State, 608 S.W.2d 226, 228 (Tex. Crim. App.
1980). A mistaken belief that a statement was not material is not a defense. Tex.
Penal Code Ann. § 37.04(b) (Vernon 2003). However, it is a defense to prosecution
under Section 37.03 that the actor retracted his false statement (1) before completion
of the testimony at the official proceeding; and (2) before it became manifest that the
falsity of the statement would be exposed. Tex. Penal Code Ann. § 37.05 (Vernon
2003). 

 3. Legal Sufficiency

 At trial, the State offered the revocation hearing transcript and copies of the
altered documents offered by appellant at the revocation hearing alongside certified
copies of the original documents. The State's witnesses agreed that appellant's
testimony at the revocation hearing regarding the date of his arrest was material
because it related to his defense for one of the allegations in the motion to revoke
probation. Also, the witnesses testified that appellant's testimony at the revocation
hearing was under oath at an official proceeding where testimony was required to be
given under oath.

 Viewing the evidence in the light most favorable to the verdict, a rational jury
could have found that appellant made the false statements under oath with the intent
to deceive and with knowledge of the statements' meaning. Tex. Penal Code Ann.
§§ 37.02, 37.03 (Vernon 2003). We conclude that a rational jury could have found
that appellant committed aggravated perjury beyond a reasonable doubt. Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Therefore, the evidence is legally
sufficient to support the conviction. 

 4. Factual Sufficiency

 Next, we look to appellant's second issue that the evidence is factually
insufficient to support his conviction. Specifically, appellant argues that he never
affirmatively testified that he was in custody on March 3, 2003, and that any
testimony in which he implied he was in custody on March 3, 2003, was clearly
shown to be the result of his good faith reliance on erroneous documents he was
provided by Dallas County. Accordingly, he argues that the evidence is too weak to
support a perjury conviction.

 At trial, appellant pointed out various errors in Dallas County's records that
were immaterial to the case, arguing that the records were filled with "human errors"
and appellant was not to blame for the discrepancies regarding the date of arrest. The
certified copies of the booking records from Dallas County were admitted and
compared with the copies of the records appellant offered in the revocation hearing. 
While other discrepancies existed in all copies of the documents, the March 3, 2003
date of arrest was only in appellant's copies, showing that appellant's copies had been
altered.

 The jury was free to disbelieve appellant's testimony that he did not alter the
documents and find from the circumstances that he altered the documents in an
attempt to support his false testimony. See Lancon, 253 S.W.3d at 705-07 (holding
that jury is in best position to evaluate credibility of witnesses and due deference
should be given to jury's determinations); see also Bodmer, 161 S.W.3d at 12
(holding that in aggravated perjury prosecution, intent to deceive may be inferred
from circumstances). Weighing the evidence in a neutral light, we conclude the
evidence supporting the conviction is not so weak that the verdict is clearly wrong
and unjust. See Laster, 275 S.W.3d at 518. Also, there is no objective basis in the
record to conclude that the great weight and preponderance of the evidence
contradicts the jury's verdict. See Watson, 204 S.W.3d at 417. Thus, we find that the
evidence is factually sufficient to support the jury's determination of guilt. 

 5. Retraction

 As part of his argument that the evidence is insufficient to support his
conviction, appellant argues that the evidence conclusively shows he retracted the
statements at issue. To qualify for the statutory defense of retraction, the actor must
have retracted his false statement (1) before completion of the testimony at the
official proceeding and (2) before it became manifest that the falsity of the statement
would be exposed. Tex. Penal Code Ann. § 37.05 (Vernon 2003). 

 Appellant argues that he retracted the testimony when it became apparent the
March 3, 2003 date might not have been correct because it did not fall on a weekend. 
Appellant contends that he was merely relying on what his documents reflected when
he gave his testimony at the revocation hearing regarding the date of his arrest and
that as soon as he realized his documents were not correct he retracted his statement.

 We conclude that the jury could reasonably have inferred that appellant did not
retract the statements at issue. Prior to the statement appellant claims was his
"retraction," the prosecutor brought the documents' appearance to the court's
attention, and the attorneys and judge commented that the documents looked altered. 
All agreed that, while all the other numbers on the document looked fine, the numbers
in the book-in date looked "funny." The prosecutor questioned appellant on voir dire
regarding the documents, and appellant adhered to his story that he was arrested on
March 3, 2003. The attorneys and judge discussed plans to verify the dates and
authenticity of the documents. Finally, after it was obvious the dates he had provided
were false, he said he knew the date he was arrested fell on a weekend, so it could not
have been March 3, 2003.

 At trial, appellant argued that the statement was a retraction and defense to the
charged offense. However, the judge who presided over the revocation hearing
testified that it was apparent the court was going to find out whether or not the
documents were altered prior to the statement appellant claims was his retraction.

 The plain language of Section 37.05 requires a defendant to retract the
statement before the completion of his testimony and before it becomes manifest that
the falsity of the statement will be exposed. Tex. Penal Code Ann. § 37.05 (Vernon
2003). The falsity of the statement had already been exposed before appellant
disclaimed his prior statement. Thus, as a matter of law, appellant did not show that
he retracted his statement before it became manifest that the falsity would be exposed. 
Accordingly, we conclude appellant did not establish the defense of retraction.

 We overrule appellant's first and second issues. 

B. Statute of Limitations

 In his third issue, appellant contends that the trial court erred in denying his
motion to dismiss, thereby allowing the State to charge him under an indictment 
brought after the statute of limitations had expired. 

 1. The Law

 The statute of limitations for presenting an indictment for aggravated perjury
is two years. Tex. Code Crim. Proc. Ann. art. 12.02 (Vernon Supp. 2009), art.
12.03 (Vernon 2005); Ex parte Tamez, 4 S.W.3d 854, 856 (Tex. App.-Houston [1st
Dist.] 1999), aff'd,38 S.W.3d 159 (Tex. Crim. App. 2001); Tita v. State, 267 S.W.3d
33, 35 (Tex. Crim. App. 2008) (holding limitations period begins to run on the date
of the alleged offense). The time of the offense mentioned in an indictment must be
some date before the presentment of the indictment, and not so remote that the
prosecution of the offense is barred by the applicable statute of limitations. Tex.
Code Crim. Proc. Ann. art 21.02(6) (Vernon 2009); Tita, 267 S.W.3d at 37. The
indictment must indicate on its face that a prosecution is not barred by the statute of
limitations. Tita, 267 S.W.3d at 37. The time during the pendency of an indictment
for the same conduct, same act, or same transaction shall not be computed in the
limitations period. Tex. Code Crim. Proc. Ann. art. 12.05(b) (Vernon 2005);
Hernandez v. State, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004). If one charging
instrument has been superseded by another, the latter, if filed after the limitations
period, must plead tolling facts, so that the indictment will indicate on its face that a
prosecution thereunder is not barred by the applicable statute of limitations. Tex.
Code Crim. Proc. Ann. art. 12.05(b); Tita, 267 S.W.3d at 37-38. 

 A defendant may object to the substance of an indictment if it appears from the
face of the indictment that a prosecution for the offense is barred by a lapse of time. 
Tex. Code Crim. Proc. Ann. art 27.08(2) (Vernon 2009); Tita, 267 S.W.3d at 37. 
A defendant may assert the statute of limitations defense by filing a motion to dismiss
under Article 27.08(2). Tita, 267 S.W.3d at 38. On a defendant's motion, a charging
instrument presented outside the applicable limitations period that does not allege
tolling is properly dismissed. Id. at 37. However, the defense of statute of limitations
is forfeited if not asserted at or before the guilt/innocence stage of trial. Id. at 39
(citing Proctor v. State, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998)).

 2. Analysis

 Appellant was originally indicted on June 15, 2004, for aggravated perjury
alleged to have been committed on June 26, 2003. A second indictment for the same
offense was brought April 19, 2006, but it did not allege that the statute of limitations
was tolled during the pendency of the original indictment. Thus, the second
indictment, on its face, was barred by the statute of limitations because the date of the
indictment was more than two years from the alleged offense. See Tita, 267 S.W.3d
at 37. Appellant did not assert the statute of limitations defense and was tried under
the second indictment.

 3. Waiver

 The State contends that appellant forfeited the statute of limitations defense by
not raising it at or before trial. Appellant argues that his First Amended Motion to
Dismiss raised the statute of limitations defense. 

 Before trial, appellant moved to dismiss on the ground that his right to a speedy
trial had been violated. However, appellant never asserted that prosecution was
barred by the statute of limitations. Appellant suggests that we should find his speedy
trial argument sufficient to raise the limitations defense. However, the right to a
speedy trial can be differentiated from a statute of limitations defense. United States
v. Marion, 404 U.S. 307, 314, 92 S. Ct. 455, 460 (1971) (holding that the right to
speedy trial did not protect against pre-indictment delay). The constitutional right to
a speedy trial does not apply to pre-indictment delay. Id. The right to speedy trial
cannot be asserted to defeat a defective indictment. See id. at 315, 92 S. Ct. at 460. 
 Appellant's limitations argument on appeal, relating to the length of time
between the offense and the indictment, was not raised by asserting the right to a
speedy trial. We conclude that appellant's motion to dismiss on speedy trial grounds
was insufficient to raise the statute of limitations defense, and thus appellant forfeited
the limitations defense. Id.at 314, 92 S. Ct. at 460; Tita, 267 S.W.3d at 39 (holding
statute of limitations defense is forfeited if not asserted at or before the
guilt/innocence stage of trial).

 We overrule appellant's third issue. 

C. Speedy Trial

 In his fourth issue, appellant contents that the trial court erred in denying his
motion to dismiss the indictment based on the violation of his constitutional right to
a speedy trial because appellant's trial did not start until 26 months after he was first
indicted.

 1. Standard of Review

 The right to a speedy trial is guaranteed by the Sixth Amendment of the United
States Constitution and is applicable to the states through the Fourteenth Amendment. 
Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182, 2184 (1972). The Texas
Constitution also guarantees a speedy trial, but Texas courts apply the same Barker
test for speedy-trial analysis. Harris v. State, 827 S.W.2d 949, 956 (Tex. Crim. App.
1992); see Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (Vernon
2005). The Barker test requires that the following factors be balanced against each
other to determine whether appellant's constitutional right to a speedy trial has been
violated: (1) the length of delay; (2) the reason for the delay; (3) appellant's
assertion of his speedy-trial right; and (4) prejudice to appellant from the delay. 
Barker, 407 U.S. at 530, 92 S.Ct. at 2192. 

 A trial court's conclusion on the balancing analysis is a purely legal question
to be reviewed de novo on appeal. Cantu v. State, 253 S.W.3d 273, 281 (Tex. Crim.
App. 2008). However, fact determinations made by the trial court and on which the
balancing test is performed are to be given the deference generally afforded to such
fact-findings. Id. 

 2. Analysis

 In his First Amended Motion to Dismiss, appellant set out facts and argued that
the State violated his right to a speedy trial. (2) A hearing was conducted on the record,
and the court denied the motion to dismiss. The following dates are relevant to
appellant's speedy-trial claim:

 June 26, 2003: Offense committed

 

 June 15, 2004: State brought first indictment 

 

 July 18, 2005: Trial court set appellant's arraignment for 8/16/05

 

 August 16, 2005: Appellant was in prison, arraignment was reset for
10/18/05

 

 August 19, 2005: Judge signed a bench warrant for appellant to appear

 

 October 20, 2005: Appellant was still in prison; trial court attempted a
video arraignment but failed due to technical
difficulties; arraignment was reset for 10/27/05

 

 October 27, 2005: Appellant was still in prison; judge signed another
bench warrant for a video arraignment; arraignment
was reset until 11/22/05 

 

 November 16, 2005: Judge signed a bench warrant for appellant to appear

 

 November 22, 2005: Appellant appeared in person, was arraigned, and
was appointed counsel; Pre-trial was set as 12/1/05;
Trial was set 2/13/06

 

 December 1, 2005: Appellant appeared; Pre-trial was set 1/17/06

 

 February 13, 2006: Trial was reset for 3/13/06

 

 March 13, 2006: Trial was reset for 3/23/06

 

 March 23, 2006: Appellant rejected state's plea offer; Prosecutor
disqualified himself; Trial was reset for 6/12/06

 

 April 19, 2006: Appellant arraigned on second indictment

 Pre-trial was set 7/18/06; Trial was set 8/14/06

 

 August 4, 2006: Motion to Dismiss filed

 

 August 11, 2006: First Amended Motion to Dismiss filed

 

 August 14, 2006: Trial began 

 With these dates in mind, we apply the four Barker v. Wingo factors: 1) length
of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the
accused. 407 U.S. 514, 530, 92 S.Ct. 2182, 2192 (1972); Cantu, 253 S.W.3d at 280. 
While the State has the burden of justifying the length of delay, the defendant has the
burden of proving the assertion of the right and showing prejudice. See Barker, 407
U.S. at 531, 92 S.Ct. at 2192; see also Cantu, 253 S.W.3d at 280. 

 a) Length of Delay

 Appellant contends that the 26-month delay between his original indictment
and his trial was a violation of his right to a speedy trial. "The Barker test is triggered
by a delay that is unreasonable enough to be 'presumptively prejudicial.'" Cantu, 253
S.W.3d at 281 (citing Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S.Ct.
2686, 2691 n.1 (1992)). Although no specific length of time triggers a speedy trial
analysis, the Court of Criminal Appeals has noted that courts have found a delay of
eight months or longer to be prejudicial. Harris, 827 S.W.2d at 956. The State
concedes that the 26-month delay between the original indictment and trial on the
new indictment is presumptively unreasonable. Thus, the other Barker factors must
be considered. Barker, 407 U.S. at 530, 92 S.Ct. at 2192.

 b) Reason for Delay

 Despite the 26-month delay, the State contends that no violation has occurred
because the delay was caused by plea negotiations, a crowded docket, and, at the
most, negligence. The State bears the burden to justify a presumptively unreasonable
delay. See Phillips v. State, 650 S.W.2d 396, 400 (Tex. Crim. App. 1983). A
deliberate attempt to delay the trial to hamper the defense should weigh heavily
against the government. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. A negligent delay
should weigh less heavily, but nevertheless should be considered because the ultimate
responsibility for such circumstances must rest with the State rather than the
defendant. Id.

 At the hearing on the motion to dismiss, the prosecutor from the revocation
hearing, DeFriend, testified that the indictments for aggravated perjury arose out of
a hearing to revoke appellant's probation. When it became clear that he would be a
potential witness because appellant rejected a plea offer, Defriend disqualified
himself. Defriend explained the delay was the combined result of the plea
negotiations and a crowded docket. DeFriend testified that appellant's incarceration
on other matters also affected his decision. 

 The State points out in its brief that a period of less than four months elapsed
after the plea was rejected and before appellant was tried on the new indictment. The
State argues that the delays were in good faith and not an attempt to harm or prejudice
appellant. Appellant, however, contends that the need to get a new indictment or
prosecutor should not weigh against him since it was not within his realm of control. 
Although the delays may have been in good faith, the ultimate responsibility for such
circumstances rested with the State; therefore, this factor weighs against the State.

 c) Assertion of Speedy Trial Right

 Although a defendant's failure to assert his speedy trial right does not amount
to a waiver of that right, failure to assert the right makes it difficult to prove denial
of a speedy trial. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. 

 Appellant concedes that he never requested either indictment be set for a
prompt trial. Also, appellant concedes he did not assert his right to a speedy trial
before the motion to dismiss was filed. Nor is there any record indicating that he
objected to any of the re-settings or delays in the case. Therefore, this factor weighs
heavily against appellant. See Phillips, 650 S.W.2d at 401 (holding defendant's
motivation in asking for dismissal rather than prompt trial may be considered to
diminish the strength of defendant's claim). 

 d) Prejudice to Appellant

 The final Barker factor focuses on whether appellant suffered prejudice as a
result of the delay. Barker, 407 U.S. at 532, 92 S.Ct. at 2193. Prejudice is assessed
in light of these rights: (1) to prevent oppressive pretrial incarceration; (2) to
minimize anxiety and concern of the accused; and (3) to limit the possibility that his
defense will be impaired. Id. Although no single factor is necessarily more important
than the other factors, case law indicates that "impairment of the defense" is the most
serious factor. Cantu, 253 S.W.3d at 285.

 Appellant contends that the harm he suffered was to be "under the threat of
prosecution for almost three years." General anxiety is relevant and "some evidence"
under the prejudice prong of Barker; however, evidence of the normal anxiety that
accompanies a trial is not sufficient to prove prejudice. Id. at 285-86. While
appellant may have felt some anxiety due to the threat of prosecution, he was already
incarcerated on a different offense, and he has provided no evidence that he
experienced anything beyond the normal anxiety that accompanies trial. (3) Moreover,
appellant does not provide any evidence to show that his ability to present his case
was harmed in any way. 

 Appellant has not shown that he was harmed by the delay. Therefore, this
factor weighs against appellant. 

 e) Balancing the Barker Factors

 In balancing the Barker factors in this case, we conclude the State did not
violate appellant's right to a speedy trial. The delay was presumptively excessive, but
appellant did not assert his right to a speedy trial, nor did he complain about the
delays. Moreover, appellant did not demonstrate prejudice beyond that anxiety which
ensued during the ordinary and inevitable delay while he was incarcerated on another
charge. Balancing all these factors, we hold that appellant's speedy-trial rights were
not violated.

 We overrule appellant's fourth issue.

D. Ineffective Assistance

 In his fifth and sixth points, appellant contends that his trial counsel was
ineffective because (1) she failed to object to testimony that should not have been
admitted because it violated the attorney-client privilege and was not relevant to the
charged offense and (2) she failed to have a firm grasp of the facts and applicable law,
resulting in her failure to introduce evidence that was relevant to appellant's defense.

 1. The Law

 To prevail on a claim of ineffective assistance of counsel, the appellant must
show: (1) counsel's performance was deficient and (2) this deficiency was so
prejudicial that it rendered the trial unfair. Strickland v. Washington, 466 U.S. 668,
687, 104 S. Ct. 2052, 2064 (1984). The first prong of the Strickland standard requires
the appellant to show that counsel's performance fell below an objective standard of
reasonableness. Id. at 687-88, 104 S. Ct. at 2064-65. Under the second prong, the
appellant must demonstrate prejudice by "show[ing] that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different." Id. at 694, 104 S. Ct. at 2068. It is not enough for the
appellant to show that the errors had some conceivable effect on the outcome. Id. at
693, 104 S. Ct. at 2067. Failure to make the required showing of either prong defeats
the ineffective assistance claim. Id. at 700, 104 S. Ct. at 2071.

 Under normal circumstances, the record on direct appeal will not be sufficient
to show that counsel's representation was so deficient and so lacking in tactical or
strategic decision making as to overcome the presumption that counsel's conduct was
reasonable and professional. Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim.
App. 2003). We cannot speculate beyond the record provided; rather, a reviewing
court must presume that the actions were taken as part of a strategic plan for
representing the client. Id. Ineffective assistance of counsel claims must be firmly
founded in the record, and that record must itself affirmatively demonstrate the
alleged ineffectiveness. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005). Appellant must prove, by a preponderance of the evidence, that there is, in
fact, no plausible professional reason for a specific act or omission. Bone v. State, 77
S.W.3d 828, 836 (Tex. Crim. App. 2002).

 When an ineffective assistance claim alleges that counsel was deficient in
failing to move to suppress or to object to the admission of evidence, appellant must
also show, as part of his claim, that the evidence was inadmissible and that the motion
to suppress or the objection would have been granted. Ortiz v. State, 93 S.W.3d 79,
93 (Tex. Crim. App. 2002) (failure to move to suppress); Jackson v. State, 973
S.W.2d 954, 957 (Tex. Crim. App. 1998) (failure to object to evidence); Keller v.
State, 125 S.W.3d 600, 608 (Tex App.--Houston [1st Dist.] 2003, pet. dism'd)
(holding that appellant did not prove ineffective assistance of counsel due to failure
to file motion to quash because hearing on motion for new trial produced no evidence
to explain why trial counsel failed to do so).

 2. Analysis

 Fred Neale, appellant's attorney for his probation revocation proceeding, was
called to testify at the perjury trial. Additionally, the transcript from the revocation
proceeding, containing statements by Neale, was admitted at the perjury trial. It is
unclear whether appellant's complaint on appeal relates to his trial counsel's failure
to object to the admission of the hearing transcripts or the trial testimony of Neale. 
In his brief, appellant points to statements in the hearing transcript that he finds
objectionable. He argues that admission of the statements was not necessary because
the issue in the perjury trial was whether appellant's testimony was false, and, thus,
the only testimony from the revocation hearing that should have been introduced at
the perjury trial was appellant's testimony. 

 Contrary to appellant's assertion, there were other issues that were relevant in
the perjury trial. For example, appellant asserted the defense of retraction at trial. To
qualify for the statutory defense of retraction, the statement must have been retracted
before completion of the testimony at the official proceeding and before it became
manifest that the falsity of the statement would be exposed. Tex. Penal Code Ann.
§ 37.05 (Vernon 2003). Accordingly, all statements at the hearing regarding the
documents and the arrest date--including those by Neale--were relevant to
determine whether it was manifest that the falsity of appellant's statements would be
exposed. Thus, Neale's testimony was relevant and probative on the issue of
retraction, and any objection to the admission of the transcript would have been
properly overruled. Tex. R. Evid. 401, 402, 403.

 Neale's statements in the hearing transcript were made before the court. The
statements were not protected under Texas Rule of Evidence 502 (Lawyer-Client
Privilege) because they were not made between client and lawyer. Tex. R. Evid.
503(b)(1). It is true that a criminal defendant has a privilege to prevent his lawyer or
lawyer's representative from disclosing any fact which came to the knowledge of the
lawyer or lawyer's representative by reason of the attorney-client relationship. Tex.
R. Evid. 503(b)(2). However, appellant waived the privilege by testifying to the
same facts as those in the statements Neale made to the court in the revocation
hearing. Tex. R. Evid. 511(1) (Waiver of Privilege by Voluntary Disclosure). (4) (5) 

 Moreover, the statements made by Neale in the admitted transcript and in his
testimony at the perjury trial are consistent with and support appellant's testimony
that the documents were altered when appellant received them. At the revocation
hearing, prior to the statements by Neale, appellant had already testified to the same
conversations with Neale. (6) Appellant testified that Neale pointed out to him that the
numbers looked "funny" on the documents and that he stated to Neale that the
documents were in the same condition as when he received them. For his part, Neale
stated on the record at the revocation proceeding he told his client the documents
looked "funny." These statements by Neale at the revocation proceeding could be
used to show that, even though appellant was aware of the document's questionable
appearance and was aware that the dates could be easily verified, he nonetheless
continued to claim that he received them in that condition from the Dallas County
authorities. Therefore, it cannot be said that counsel's failure to object was not trial
strategy. See Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) (holding
that in absence of a record identifying what trial counsel's reasons may have been for
pursuing a chosen course, we presume the actions were part of sound trial strategy). 
 In his sixth point, appellant also claims that trial counsel provided ineffective
assistance by failing to have a firm grasp of the facts and law, and as a result she
failed to introduce evidence relevant to appellant's defense. First, appellant argues
that certified copies of Dallas County records were used in the perjury trial, as
opposed to the non-certified copies of those records introduced at the revocation
hearing and that these certified copies were additional records not before the court at
the revocation hearing. Appellant complains that his trial counsel made no objection
to the certified copies and did not request more time to review the records. As a
result, appellant claims his trial counsel was unable to "use the certified copies to
appellant's advantage." Additionally, appellant claims that trial counsel's lack of
preparation resulted in her failure to have a unified trial strategy.

 Appellant has failed to indicate what objection trial counsel should have made
to the admission of certified copies of public records in the perjury trial or how the
failure to object fell below the professional standard of care. Additionally, assuming
appellant's trial counsel had objected and requested more time to review the certified
copies, there is no argument or testimony as to what appellant could have proved. In
his brief, appellant contents that his motion for new trial pointed out discrepancies
that could have been used to his advantage at trial. However, appellant's trial
attorney pointed out numerous discrepancies in the records, and thus, the
discrepancies were before the jury for consideration.

 At the perjury trial, appellant's trial counsel adhered to the same theme
appellant advances on appeal: that he received documents from Dallas County
reflecting an inaccurate arrest date and he based his (mistaken) testimony during the
revocation hearing on those inaccurate documents. Trial counsel argued that the
revocation hearing record should be viewed as a whole, noting discrepancies
throughout. Trial counsel conveyed this theory in her opening statement, and through
the evidentiary phase of the trial, questioning witnesses on inaccuracies in the
documents. For instance, trial counsel questioned Officer Dominguez, the arresting
officer, regarding a supplemental report that indicated appellant had a tattoo on his
right hand and was released on "4/2/03," both of which are incorrect. Additionally,
trial counsel pointed out discrepancies in the Dallas County Sheriff's Office
transaction receipt relating to the amount of money in appellant's possession when
he was booked in and when he was released. 

 Finally, appellant's trial counsel did adhere to a consistent trial strategy. Trial
counsel reminded the jury of her theory in her closing argument: "[A]t the beginning
of this trial, I asked you not to look at the statements made in a barrel." She argued
that, considering all the inconsistencies and errors throughout the records and
transcript, the State had not met the burden of proving guilt beyond a reasonable
doubt. 

 We conclude that the record does not affirmatively demonstrate that trial
counsel was ineffective, and therefore, appellant has failed to prove the first prong of
Strickland with regards to both of ineffective assistance claims. See Strickland, 466
U.S. at 688, 104 S. Ct. at 2064; Bone, 77 S.W.3d at 835; Jackson, 973 S.W.2d at 957. 
Thus, we need not address whether there is a reasonable probability that, but for his
counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. 

 We overrule appellant's fifth and sixth points of error.

E. Oral Pronouncement of Sentence

 In his seventh point of error, appellant contends that the trial court's oral
pronouncement that his sentence would run consecutively to the prior primary
sentence was defective because the court did not adequately identify the prior
conviction. 

 1. Standard of Review

 A trial court's pronouncement of sentence is oral, while the judgment,
including the sentence assessed, is merely the written declaration and embodiment of
that oral pronouncement. Tex. Code Crim. Proc. Ann. art. 42.01, § 1 (Vernon
2007); see Banks v. State, 708 S.W.2d 460, 461-62 (Tex. Crim. App. 1986)
(reforming insufficient written judgment to accurately reflect cumulation order orally
pronounced at sentencing). When the oral pronouncement of sentence and the written
judgment vary, the oral pronouncement controls. Coffey v. State, 979 S.W.2d 326,
328 (Tex. Crim. App. 1998).

 The trial court had statutory authority and discretion to decide whether
appellant's sentences should be served concurrently or consecutively. Tex. Code
Crim. Proc. Ann. art. 42.08(a) (Vernon 2007). If a trial judge wishes to "stack" a
defendant's sentences so that they run consecutively, he must make such an order at
the time and place that sentence is orally pronounced. Ex parte Vasquez, 712 S.W.2d
754, 755 (Tex. Crim. App. 1986); Ex parte Voelkel, 517 S.W.2d 291, 292 (Tex. Crim.
App. 1975). The sentence must be pronounced in the defendant's presence. Tex.
Code Crim. Proc. Ann. art. 42.03 § 1(a) (Vernon Supp. 2008). Once a defendant
is removed from the courtroom and begins serving his sentence, it is too late to
cumulate the sentence just imposed with an earlier one. Ex parte Madding, 70
S.W.3d 131, 136 (Tex. Crim. App. 2002). A trial court does not have the statutory
authority or discretion to orally pronounce one sentence in front of the defendant but
enter a different sentence in his written judgment outside the defendant's presence. 
Id.

 2. Analysis

 When the court gave an oral pronouncement of the sentence in the presence of
appellant and appellant's trial counsel the State inquired whether the sentence would
run concurrently or consecutively. The court made clear at the time of oral
pronouncement that the sentence would run consecutively with the primary offense
and "the judgment should reflect that." The written judgment also provided that the
sentence would run consecutively with the prior sentence, specifying the trial court
number of the prior conviction, the date of the prior conviction, the nature of the prior
conviction, the correct name of the court in which the prior conviction occurred, and
the term of years assessed in the prior case. 

 The cases cited by appellant involve the oral pronouncement of a sentence that
does not provide for cumulation, followed by a written judgment that orders
cumulation. See Madding, 70 S.W.3d at 136; Vasquez, 712 S.W.2d at 755; Voelkel,
517 S.W.2d at 292. In the present case, the oral rendition does not vary from the
written judgment. 

 Appellant cites to Banks v. State for the proposition that a cumulation order
generally should contain (1) the trial court number of the prior conviction, (2) the date
of the prior conviction, (3) the nature of the prior conviction, (4) the correct name of
the court in which the prior conviction occurred, and (5) the term of years assessed
in the prior case. 708 S.W.2d 460, 461 (Tex. Crim. App. 1986). However, appellant
misconstrues the authority. These components are required in the written judgment. 
The written judgment in this case was sufficient to satisfy the requirements.

 In the present case, the court's oral pronouncement providing for cumulation
with the "primary offense" provided sufficient specificity to identify the sentence that
would be cumulated. Here, the context of the entire proceeding before the trial court
made clear the identity of the prior sentence onto which the court stacked the new
sentence. See, e.g., Hill v. State, 213 S.W.3d 533, 537 (Tex. App.-Texarkana 2007,
no pet.) (holding that the context in which statement "consecutive with whatever
charge he is now being held on" was made was understood by all and was not at
variance with the written order of cumulation). In the present case, appellant was
charged with aggravated perjury for making false statements at his probation
revocation proceeding in the same court where appellant's probation was revoked. 
The entire perjury trial revolved around statements made at that revocation hearing,
and it was known to all parties that appellant had begun serving that primary
conviction during the time he was awaiting trial for perjury. The trial judge from the
revocation proceeding testified at the perjury trial that she revoked appellant's
probation. The style and caption of the offense was placed in the indictment, was
read aloud during trial, and was in the application paragraph of the jury charge. It
was clear that the primary offense was the offense on which he had previously been
on probation. The oral pronouncement was therefore sufficient to support the written
order.

 Appellant's seventh point of error is overruled.

Conclusion

 Having overruled appellant's seven points on appeal, we affirm the judgment
of the trial court. 

 

 George C. Hanks, Jr.

 Justice


Panel consists of Justices Keyes, Alcala and Hanks.

Do not publish. See Tex. R. App. P. 47.2(b). 
1. The "Property Inventory at Time of Book-In" receipt was a form filled out by hand that
reflected appellant's possessions at the time he was booked into custody. The date was filled
in "3-3-03." The court noted aloud that the book-in date looked like it was "whited out" and
altered.
2. Specifically, appellant argued that the State failed to satisfy its statutory obligations under
Article 32A.02 of the Speedy Trial Act. Appellant's motion cited the now defunct speedy
trial act, which has long been held unconstitutional and was repealed by the Texas
Legislature effective June 18, 2005. See Tex.Code Crim. Proc. Ann. art. 32A.02 (Vernon
2003); Meshell v. State, 739 S.W.2d 246, 257 (Tex. Crim. App. 1987) (speedy trial act is
unconstitutional). However, in the hearing before trial, counsel appears to argue the
constitutional right to speedy trial. Thus, we will consider whether appellant's constitutional
right to a speedy trial was violated.
3. At the hearing, appellant testified that the delay harmed him by causing his parole hearings
to be delayed twice. Appellant suggested that they were delayed because of pending charges. 
On cross-examination, the State brought out eight prior felony convictions, which also could
have factored into the parole board's decision. Thus, appellant failed to show the pending
charges resulted in the denial of parole. Also, appellant never briefed this point for appeal.
4. A person . . . waives the privilege if: (1) the person . . . while holder of the privilege
voluntarily discloses or consents to disclosure of any significant part of the privileged matter
unless such disclosure itself is privileged. Tex. R. Evid. 511(1).
5. [Prosecutor]: Okay. Let me ask you something about Defendant's Exhibit Number 5. Do
you see this book-in date where it says 3/3/2003 and it --and the -- the first
three for March is, you know, fairly normal looking, and then the zero three
for March the 3rd, doesn't that look different from the first three?


 [Harris]: He brought that up to me.


 [Prosecutor]: Yeah, I'm bringing it up to you, too. Why -- why does that look different?


 [Harris]: I can't tell you that. What happens, when you come from Dallas County, they
give all your property and everything, paperwork, everything is transferred to
-- given to these -- to the officers. And when I got transferred to them, they
gave me all the paperwork. They gave me a copy of the motion, you know,
like that was filed with the capias on it. This is--I was telling him, I said,
"Well, this one here is when they--they booked me in." They
wrote--hand--this one--I didn't--I got this one here. This one was in my
possession. This is what I got when I first come in. This is like when you go
to jail and that check everything, this is what they gave me. This is mine. 
This one here, this came with them.


 (Emphasis added.)
6. See fn.6, supra.