**Brian HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–05–00227–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Oct. 11, 2006.

Decided Jan. 11, 2007.

David Pearson, IV, Fort Worth, for appellant.

Judy Hodgkiss, Pro Tem, for Lamar County Atty's Office, The Moore Law Firm LLP, Paris, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

On a Saturday evening in January 1994, then fifteen-year-old J.B. was taken to a Paris, Texas, residence by three men: Katong Sanders—a nineteen-year-old male J.B. had previously dated and with whom she had previously had a sexual relationship—the twenty-two- or twenty-three-year-old Brian Hill, and Brian's nineteen-year-old brother, Terrell Hill.[1] Sanders and Terrell had sex with J.B. that night.[2] Though evidence suggests that Hill at least *tried* some form of sexual encounter with J.B., it also suggested that Hill was unable to attain enough of an erection to be able to achieve much, if any, penetration.

Initially charged in 1994 with sexual assault, Hill was finally tried in the Fall of 2005 on an amended indictment for sexual assault of a child, was convicted of the lesser-included offense of attempted sexual assault of a child, and was sentenced to three years' confinement, which was "stacked" on an existing sentence.

Hill asserts on appeal that stacking his sentence was improper and that he was improperly denied his right to a speedy trial. We affirm the judgment of the trial court because we hold (1) the trial court's oral stacking pronouncement and its written stacking order were not at variance, (2) the trial court did not abuse its discretion in using the phrase "ceased to operate" in its stacking order, and (3) Hill was not deprived of his right to a speedy trial.

### (1) The Trial Court's Oral Stacking Pronouncement and Its Written Stacking Order Were Not at Variance

■ Hill asserts that the trial court's oral pronouncement of sentence cumula-

---

1. For clarity, we will refer to Terrell Hill by his first name. Appellant Brian Hill will be referenced by use of his last name.

2. Earlier that afternoon, J.B. had agreed to meet with Sanders that evening. J.B. testified that, during the earlier conversation, Sanders had suggested that J.B. have sex with him and with some male friends of his that night but, in varying testimony, J.B. told Sanders she did not want to do that, or she would think about it, or "whatever." After going to the movies that evening, J.B. and a girlfriend met Sanders outside the theater and entered a car with Sanders, Hill, and Terrell. The car was owned and driven by Hill. After taking J.B.'s girlfriend directly home at her request, the four stopped at a gasoline station to "fill up" the car, at which time Sanders gave J.B. a quarter and directed her to call her parents to tell them she was running errands with her girlfriend's sister and would be home as soon as she was finished—admittedly a false story. After J.B. completed the call, the four proceeded to a residence owned by Hill and Terrell's mother, who was known to be at work at the time. There, the three men pursued their desires against J.B.

tion and its written cumulation order were fatally at variance.[3] We disagree.

On the day of trial, the State filed a written motion asking that any sentence imposed due to the current trial be stacked with Hill's previous sentence for which he was "currently on parole," the previous sentence was identified as "Cause No. 13164 . . . the offense of Delivery of a Controlled Substance."

After the jury had returned its punishment verdict and had been discharged, the State reminded the trial court of its pending motion to cumulate. Defense counsel asked that the current sentence not be stacked "with [Hill's] prior conviction in '91." In further dialogue with the trial court, defense counsel estimated that, if Hill's parole was revoked, he would have about ten years more to serve on the prior sentence. The State argued that the sentences should be served separately. The trial court agreed: "All right. The Court then will grant the motion to run the sentences consecutively. It will be accumulated [sic] in addition to his other time." The trial court further pronounced that the sentence will "run consecutive with whatever charge he is now being held on."

The written judgment included this cumulation order:

> The court orders that the sentence in this conviction shall run consecutively and shall begin only when the judgment and sentence in the following case has ceased to operate. Cause Number 13164, Delivery of Controlled Substance Group 1 < 28 Grams, which Defendant was convicted of on March 18, 1991 and sentenced to 15 years in the Texas Department of Criminal Justice Institutional Division.

Taking out of context one part of the trial court's oral pronouncement of sentence—"consecutive with whatever charge he is now being held on"—Hill argues the oral pronouncement is at variance with the written order of cumulation. But, in making the argument, Hill overlooks the other utterances of the trial court and the context within which those utterances occurred. And the context of the oral pronouncement makes clear that all understood the pronouncement to be what was ultimately incorporated into the written order.

As can be seen from the above recitation of that context, the State had filed a written motion identifying the sentence on which it was requesting the current sentence be stacked. The dialogue among counsel and the trial court immediately before sentencing makes clear that all understood the identity of the existing sentence onto which the new sentence would be stacked—in fact, there was reference to only one prior sentence pending. There was no variance.

Hill cites various cases which found oral cumulation orders too vague to be enforced. *See Olivas v. State*, No. 10–03–00092–CR, 2005 WL 169336, 2005 Tex.App. LEXIS 608 (Tex.App.-Waco Jan. 26, 2005, no pet.) (not designated for publication) ("stacked on top of any other sentence [defendant was] required to serve"); *Colliflower v. State*, No. 2–03–366–CR, 2004 Tex.App. LEXIS 10467, 2004 WL 2624502 (Tex.App.-Fort Worth Nov. 18, 2004, pet. granted) (not designated for publication) (sentence stacked on "whatever exists in your other cases that are pending"); *Odlozelik v. State*, 837 S.W.2d 825 (Tex.App.-

---

**3.** Hill does not argue that the written order contains insufficient information to make it a valid order, but asserts simply that the oral and written cumulation orders are at fatal variance. In citing cases with vague oral pronouncements, Hill inserts the element of vagueness into this point of error.

Tyler 1992, no pet.) ("sentence ordered herein ... shall run consecutive with any other sentence now being served"). In each case, however, the trial court's oral pronouncement of sentence cumulation was a general statement intended to pick up any prior sentence, or multiple prior sentences without specifying which. In none was a prior sentence identified. Here, the context of the trial court's oral pronouncement made clear the identity of Hill's single prior sentence onto which the trial court stacked the new sentence.

 To be valid, an order directing sentences to be stacked need only "be sufficiently specific to allow the Texas Department of Criminal Justice–Institutional Division ... to identify the prior with which the newer conviction is cumulated." *Ex parte San Migel,* 973 S.W.2d 310, 311 (Tex.Crim.App.1998). The written cumulation order is sufficiently specific,[4] and the oral and written orders are not at variance.

We overrule Hill's argument to the contrary.

*(2) The Trial Court Did Not Abuse Its Discretion in Using the Phrase "Ceased to Operate" in its Stacking Order*

 Hill also attacks the sentence cumulation order on the basis that, because he was on parole from his prior sentence, that prior sentence had "ceased to operate" and thus was not capable of being used to stack with the new sentence. Therefore, argues Hill, the trial court abused its discretion in stacking the sentences. Again, we disagree.

Hill premises his argument on a 2000 opinion of the Texas Court of Criminal Appeals interpreting when a sentence "ceases to operate" within the meaning of paragraph (a) of Article 42.08 of the Texas Code of Criminal Procedure and when a sentence has been "completed" within the meaning of paragraph (b) of that article. *See Ex parte Kuester,* 21 S.W.3d 264, 266–73 (Tex.Crim.App.2000); *see also* TEX.CODE CRIM. PROC. ANN. art. 42.08(a), (b) (Vernon 2006). While incarcerated, Kuester struck a correctional officer, for which he was sentenced to four years' confinement, to begin only when his current sentence "ceased to operate." While *Kuester* construes the phrase as it is used in the statute, the case does not stand for the proposition that a trial court cannot use a former sentence, for which the defendant is on parole, as the base sentence on which to stack a new sentence. In fact, *Kuester* has no application to this case whatever.

At the time of sentencing, the fact that Hill was on parole under his one prior sentence was clearly understood by both counsel and the trial court. The trial court obviously intended to stack the new sentence onto Hill's prior sentence for which he was on parole. And that result was within the trial court's discretion in ruling whether to stack Hill's sentences. *See* TEX.CODE CRIM. PROC. ANN. art. 42.08(a)

---

4. The Texas Court of Criminal Appeals recommends that a cumulation order identify the prior conviction onto which a new sentence is being stacked, by providing five pieces of information about that prior conviction: (1) the trial court case number, (2) the name of the trial court, (3) the conviction date, (4) the length of the sentence, and (5) the offense. *Williams v. State,* 675 S.W.2d 754, 764 (Tex. Crim.App.1984); *Ward v. State,* 523 S.W.2d 681 (Tex.Crim.App.1975). But omitting one or more of those will not invalidate a cumulation order if the remaining identification of the prior conviction is sufficiently specific to give notice, both to the defendant and to the Texas Department of Corrections, of the base sentence onto which the new sentence is being stacked. *Williams,* 675 S.W.2d at 764. Here, the written order contained four of the five elements and, thus, was sufficient. Hill does not claim otherwise.

(explicitly granting trial court discretion to stack). A trial court has the authority to stack a new sentence onto a prior sentence for which the defendant is then on parole. *Wilson v. State*, 854 S.W.2d 270, 273 (Tex. App.-Amarillo 1993, pet. ref'd); *Carpenter v. State*, 828 S.W.2d 441, 442 (Tex.App.-Austin 1992, no pet.); *Jimenez v. State*, 634 S.W.2d 879, 881–82 (Tex.App.-San Antonio 1982, pet. ref'd).

The trial court did not abuse its discretion in stacking Hill's sentence. We overrule this assertion of error.

### (3) Hill Was Not Deprived of His Right to a Speedy Trial

Finally, Hill claims that he was denied his right to a speedy trial and that the trial court erred in refusing to dismiss the case against him on that basis. We disagree.

This case is notable for the almost eleven years that elapsed between Hill's October 27, 1994, indictment and his October 11, 2005, trial. The events along the way are numerous:

| | |
|---|---|
| January 22, 1994 | Events occur which result in the charge in this case. |
| October 27, 1994 | Hill is indicted in this case. |
| November 11, 1994 | The State announces "ready" for trial. |
| December 26, 1994 | Hill bonds out of jail. |
| March 27, 1996 | Hill fails to appear at a pretrial hearing; bond is revoked. |
| November 21, 1997 | Hill's retained counsel seeks to withdraw from representing him, asserting that Hill cannot be found and that he apparently has had no contact with "anyone" relative to this case "for almost three years." Motion granted. |
| August 6, 2004 | Hill is arrested for failure to appear. |
| August 16, 2004 | Hill requests defense counsel be appointed. |
| October 20, 2004 | The then State's attorney, that is, the County Attorney of Lamar County, files a motion, based on conflict of interest, that all attorneys in the County Attorney's office of Lamar County be recused and a County Attorney pro tem be appointed from the County Attorney's office of neighboring Red River County. Motion granted. |
| May 16, 2005 | Motion is filed for a different County Attorney pro tem to be appointed, namely Frank Long, without elaboration on the reason for the second appointment. Motion granted |
| May 2005 | Hill is tried and acquitted on a charge of failure to appear. |
| July 6, 2005 | Hill files motion to be given a speedy trial on this charge or that this case be dismissed because of delay. |
| September 26, 2005 | Pretrial hearing;[5] trial court grants Hill's motion for speedy trial. |
| October 11, 2005 | Hill is tried and convicted on this charge. |

■ Hill's motion for a speedy trial prays that "he be granted a speedy trial ... or that [the] indictment be dismissed and that [Hill] be released from confinement." Hill did not bring his speedy trial motion before the trial court, but, on September 26, 2005, at a hearing set to consider the State's motion to amend the indictment, the trial court took it up sua sponte, immediately ordering a speedy trial for Hill, without further hearing. Hill was tried within approximately two weeks after that order. Thus, Hill received one form of the relief he requested. Thus, no error is shown, and nothing is presented for our review. *See Cline v. State*, 685 S.W.2d 760, 762 (Tex.App.-Houston [1st Dist.] 1985, no pet.).

Even if Hill's motion for speedy trial had sought only, or initially, a dismissal— that is, even if it had not sought just a

---

5. The trial court's comments during the hearing suggest that September 26 was the first time the trial court became aware of the existence or age of the case.

speedy trial or had asked for a speedy trial only in the alternative that dismissal was denied—error would not have been shown.

■ At the September 26 hearing, Hill made no argument and tendered no evidence in support of his motion for speedy trial, except that the trial court noted the long delay in the case and Hill noted that his speedy trial motion had been on file for approximately two months. In assessing a speedy trial claim on appeal, we are not to consider arguments that are made for the first time on appeal and must base our assessment in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Dragoo v. State,* 96 S.W.3d 308, 313 (Tex. Crim.App.2003). Because there were no arguments or evidence before the trial court in support of the motion for speedy trial, we must overrule this point of error.

■ Even considering the merits of Hill's speedy trial claim, the claim must fail.

■ "The Sixth Amendment to the United States Constitution guarantees the accused's right to a speedy trial." *Zamorano v. State,* 84 S.W.3d 643, 647 n. 5 (Tex.Crim.App.2002) (citing *Barker v. Wingo,* 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Dickey v. Florida,* 398 U.S. 30, 37, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); *Smith v. Hooey,* 393 U.S. 374, 377–78, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); *Klopfer v. N. Carolina,* 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967)); *State v. Fisher,* 198 S.W.3d 332, 336 (Tex.App.-Texarkana 2006, pet. ref'd). "In addition, Article I, § 10 of the Texas Constitution guarantees the accused in all criminal prosecutions the right to a speedy and public trial." *Zamorano,* 84 S.W.3d at 647 n. 6; *Fisher,* 198 S.W.3d at 336.

■ When faced with a claim that an appellant's speedy trial right has been abridged, we are to evaluate, under the totality of the circumstances, *Barker's* four-part test: "the length of the delay, the State's reason for delay, whether the delay was due to lack of diligence on the part of the State, and whether the delay caused harm to the accused." *Fisher,* 198 S.W.3d at 336; *Ex parte Martin,* 33 S.W.3d 843, 845 (Tex.App.-Austin 2000), *pet. dism'd, improvidently granted,* 46 S.W.3d 932 (Tex.Crim.App.2001); *see also Shaw v. State,* 117 S.W.3d 883, 888–89 (Tex.Crim.App.2003). Based on the facts of the case, we assign varying weights to the *Barker* factors, and determine whether, taken together, they weigh either for or against finding a speedy trial violation. *Fisher,* 198 S.W.3d at 337. We also note that "[n]o one factor possesses talismanic qualities...." *Zamorano,* 84 S.W.3d at 648 (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. 2182).

■ In our review, we defer to the trial court in its evaluation of factual issues and in drawing inferences from the facts. *Kelly v. State,* 163 S.W.3d 722, 726–27 (Tex.Crim.App.2005). We review legal questions de novo. *Johnson v. State,* 954 S.W.2d 770, 771 (Tex.Crim.App.1997). The balancing test as a whole is purely a legal question. *Id.* We are to review the trial court's ruling on a motion to dismiss for want of a speedy trial in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Shaw,* 117 S.W.3d at 889; *Dragoo,* 96 S.W.3d at 313. And, the appellate court must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw,* 117 S.W.3d at 889; *State v. Munoz,* 991 S.W.2d 818, 821 (Tex.Crim.App.1999).

*(a) The Length of the Delay*

We measure the delay from the defendant's arrest or formal accusation. *Shaw,*

117 S.W.3d at 889 (citing *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971)). Because this delay of approximately eleven years is presumptively prejudicial, the *Barker* inquiry would be clearly triggered. *See Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *see also State v. Owens,* 778 S.W.2d 135, 136–38 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (seven-month delay established prima facie showing).

Between the date of the indictment and the date of Hill's failure to appear, approximately seventeen months elapsed, Hill being incarcerated for only two of those months. Thereafter, for a period of approximately eight years and five months, Hill had absented himself and was not located. During that time, he suffered no incarceration connected with this case. Two months later came the initial recusal motion, followed seven months after that by the second motion to appoint a county attorney pro tem and the trial on Hill's related charge for failure to appear. Then, two months elapsed before Hill filed his motion for speedy trial, which was heard by the trial court approximately two and one-half months thereafter. From the time the trial court was made aware of the delays and granted the motion for speedy trial, only two more weeks elapsed before trial.

In summary, of the approximately 132 months of delay between Hill's indictment and his trial, Hill was incarcerated for sixteen months, legally free from custody for fifteen months, and absent without permission for 101 months. We weigh this factor moderately against the State.

*(b) The State's Reason for the Delay*

The second factor we consider is the justification the State offers for the delay. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 648, 649–50. During the thirty-one months Hill was ei-ther incarcerated or properly bonded out of custody, there were two motions to change the attorney representing the State in this case and a trial on Hill's related charge of failure to appear. Then, of course, there was the substantial hiatus—101 months—during which Hill's location was not known. There are numerous factors justifying the significant delay. While admittedly the record is not well developed here due to the trial court's quick grant of a speedy trial without much of a hearing, the State was not given an opportunity to provide its reasons for delay at the hearing. We weigh the record on this factor slightly in favor of the State.

*(c) Hill's Assertion of His Speedy Trial Right*

Next, we consider the timeliness of Hill's assertion of his right to a speedy trial. *Barker,* 407 U.S. at 529, 531–32, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 648, 651–52. Hill filed his motion for speedy trial after approximately 129 months had passed following his indictment, and approximately three months before his trial. Even then, he did not urge the motion to the trial court, but waited for the trial court to raise it at a hearing set for another purpose. And, at that hearing, Hill provided no evidence and made little or no argument in support of his speedy trial motion. We weigh this factor heavily against Hill.

*(d) Prejudice Caused by the Delay*

The final factor we consider is the extent to which there is evidence Hill was prejudiced by the State's delay. *See Barker,* 407 U.S. at 531–32, 92 S.Ct. 2182; *Zamorano,* 84 S.W.3d at 648, 652–54. "Prejudice ... should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect": "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and

concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. Impairment of the defense is the most important of the three interests "because the inability of a defendant adequately to prepare his [or her] case skews the fairness of the entire system." *Id.*

Aside from approximately sixteen months of incarceration, much of which could also be attributed to Hill's other charge (failure to appear), there is no evidence of prejudice. We weigh this factor moderately against Hill.

### (e) Weighing the Barker Factors

After individually assessing the four *Barker* factors, we consider them in the aggregate, along with any other relevant circumstances known to us. *Id.* at 533, 92 S.Ct. 2182; *Zamorano*, 84 S.W.3d at 648, 654–55. We evaluate the strength of each *Barker* factor and balance the respective strengths of those factors against the relative weights of the remaining factors "in light of the conduct of both the prosecution and the defendant." *Zamorano*, 84 S.W.3d at 648; *see also Barker*, 407 U.S. at 530, 92 S.Ct. 2182. While the delay was extensive, the vast majority of that delay was caused by Hill's absenting himself. The record contains a number of elements tending to justify much of the other delay. Hill asserted the right only at the last minute, only gently, and was granted a trial promptly thereafter. No prejudice appears other than incarceration, much of which is also attributable to another charge.

Hill was not denied his right to a speedy trial.

We affirm the judgment of the trial court.