Opinion issued January 27, 2011


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NOS. 01-10-00138-CR, 01-10-00139-CR

———————————

Tavares Antwan Ryan, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 338th District Court

Harris County, Texas



Trial Court Case No. 1177027, 1177028

 



 

MEMORANDUM OPINION

Appellant, Tavares Antwan Ryan, appeals his
convictions for aggravated sexual assault and aggravated kidnapping.  Tex.
Penal Code Ann. §
20.04 (West 2003), § 22.021
(West Supp. 2009).  In two issues,
appellant asserts that the trial court should have excluded a complaining witness’s
testimony after she conferred with another State witness and that the trial
court violated his right to a speedy trial. 
We conclude the trial court did not abuse its discretion by declining to
instruct the jury to disregard the challenged testimony.  Applying the four-part balancing test from Barker v. Wingo,[1] we also conclude that the
approximately 18-month delay between appellant’s arrest and the start of his
trial did not infringe upon his right to a speedy trial because appellant
acquiesced in all delays.  We affirm.

Background

Late one night in July 2008, the complainants, K.H. and T.E.,
were walking along the frontage road of Interstate 10 on the east side of
Houston, heading for a temporary work agency to try to get jobs the next
morning.  They were approached by two men
in a car who asked if the women needed a ride. 
K.H. hesitated, but one of the men said that he would not hurt the women
because he had two kids.  He showed them
two car seats as proof.  K.H. and T.E. got
into the back seat of the car.

The women realized something was wrong when the men drove
past the temporary agency.  The men said
that they were going to have sex with the women, and the man sitting in the
passenger’s seat revealed a handgun and cocked it.  T.E. began to have a panic attack, and the
men threw her out of the car.  T.E. walked
to a nearby factory, where workers let her use the phone to call police.  She gave police the license plate number of
the car and approximate descriptions of the two men.

The men took K.H. to a house, where both had sexual
intercourse with her in her female sexual organ, mouth, and anus.  K.H. noticed that the house had an exposed
shower in the bedroom.  At one point
during the assault, the men left K.H. alone in the bedroom.  K.H. cleaned herself with toilet paper and
baby wipes and put her clothes back on.  She then took three Social Security cards and
a child’s photograph from the bedroom, hiding them in her clothes.  The man who had been sitting in the driver’s
seat had sexual intercourse with K.H. again, and then the two men drove her to
a truck-towing yard and left her there. 
As they drove away, K.H. memorized their license plate number.  At her request, a towing-yard worker called
the police.  The police and an ambulance
came, and the ambulance took K.H. to the hospital.

At the hospital, a nurse performed a sexual assault
examination on K.H.  As part of the exam,
the nurse took a medical history, in which K.H. stated that she had been
sexually assaulted by men called “AD” and “I-Wall.”  The nurse documented physical injuries,
collected swabs from K.H.’s skin and female sexual organ, and took the clothes
that K.H. wore during the assault.  K.H.
told the nurse that neither assailant wore a condom.

          The
license plate number reported by K.H. and T.E. led police to the apartment of
LaShaunda Hayes.  The Social Security
cards taken by K.H. belonged to Hayes, Hayes’s sister, and Hayes’s niece.  At the apartment, police arrested Hayes’s
fiancé, Donald Carr.  Police went to
Hayes’s sister’s house nearby, where there was a bedroom with a bathroom that matched
K.H.’s description of the bedroom where the assault took place.  Police also learned of an individual known as
“AB,” who lived nearby and was a friend of Carr.  Police learned that “AB” was appellant.

          Appellant
heard that there was a warrant for his arrest, and he turned himself in to the
police.  Police showed K.H. a photo array
that included a photo of appellant.  K.H.
quickly chose the photo of appellant, identifying him as the man who assaulted
her.  The police also showed a photo
array to T.E., who circled appellant’s photo and a filler photo.

          K.H.’s
sexual assault kit yielded several DNA samples. 
All but one of these samples excluded appellant, and the remaining
sample did not permit the analyst to make any conclusion regarding appellant.  The district attorney sought a continuance in
October 2009 so that DNA tests could be performed on the baby wipes recovered
from the scene, but this second set of tests also excluded appellant from the
recovered DNA samples.  Carr was the
source of at least one sample of DNA from the sexual assault kit, and he could
not be excluded from other samples from the kit and from the wipes.

          Appellant
filed a motion for a speedy trial on Thursday, January 21, 2010.  Appellant’s motion read as follows:

COMES NOW, the Defendant
in the above-entitled and numbered cause, by and through his attorney of
record, and files this Motion For Speedy Trial and would show the Court as
follows:

The Defendant stands
charged with Aggravated Kidnapping and Aggravated Sexual Assault in the above
numbered causes.  He has been continually
confined and unable to post bail since his arrest in August of 2008.  The State has successfully requested two
delays in his trial from the court and this Honorable Court has refused the
Defendant’s repeated requests for an affordable bail pursuant to Texas Code of
Criminal Procedure Art 17.151.  Defendant
is ready for trial, has perpetually been ready for trial and requests this
Honorable Court grant him his constitutional right to have a speedy trial
without further delay.  In the
alternative, Defendant respectfully requests this Honorable Court dismiss both
of the above causes based upon a speedy trial violation.

The record does not show whether this
motion was presented to the trial court or whether the trial court ruled on it.  On the same day, the case was set for trial
on February 4 and 5, 2010.  Appellant and
his attorney signed a form titled “Agreed Setting” in which they agreed to the
new trial dates.

A little over a week before trial began, the district
attorney realized that the photo array that included appellant’s picture had
not been provided to the defense.  The
district attorney notified appellant’s trial counsel and supplied him with a
copy of the photo array during jury selection on Friday, February 5.  During a pretrial hearing conducted on the
following Monday, appellant’s trial counsel moved for a continuance in order to
research case law relating to the photo array. 
The trial court denied the continuance.   

At the same pretrial hearing, the State called K.H. to
testify.  K.H. was present when the trial
court invoked “the rule” by instructing witnesses that they had to remain
outside the courtroom when they were not testifying and that they were not
permitted to converse with other witnesses while the trial was ongoing.  During this hearing, K.H. testified that
appellant was the driver of the car and that the other man was carrying the
handgun.

Trial began the next day, and the trial court again invoked
the rule in K.H.’s presence.  While
waiting outside the courtroom, K.H. was approached by Hayes, who was also a
witness for the State.  Hayes had not
been present when the trial court admonished witnesses not to discuss the case,
and K.H. did not know that Hayes would testify. 
Hayes asked if K.H. was the victim. 
Hayes then gave K.H. a hug and said that she was sorry.  During the conversation, K.H. learned that
appellant’s nickname was AB, not AD.

Hayes testified after she spoke with K.H.  She stated that she knew appellant and that
appellant and Carr “were very close.” 
She said that she knew appellant by the nickname “AB,” which he was
called because he was from Alabama.  She
also said that other people called appellant “T.”

K.H. testified after Hayes did, describing the events of the
night on which she was attacked.  She
testified differently from the pretrial hearing by stating that appellant was
the passenger, not the driver.  She also stated
for the first time that appellant wore a condom when he sexually assaulted
her.  She explained that when she told
the sexual assault nurse the assailant did not use a condom, she was not
focused on that matter as she had just been “traumatized” by the sexual
assault.  K.H., however, also testified
that when both men ejaculated on her face, they did not use condoms.  K.H. initially stated that the only name she
heard was “AD.”  Upon further
questioning, she stated that the name was either “AD or AB,” and she indicated
that she was referring to appellant.  She
later stated that she told police that his name was “AD” or just “D.”  K.H. stated that she learned appellant’s actual
nickname, “AB,” from talking to Hayes and that Hayes “connected all the pieces
to the dots.”

 The next day, the
trial court held a hearing concerning K.H.’s conversation with Hayes.  K.H. stated that she had no idea who Hayes
was before their encounter.  K.H. stated
that Hayes told her that she had been threatened and told not to testify.  K.H. testified that in addition to talking to
Hayes, she also talked to T.E. but that she and T.E. did not discuss the
case.  Appellant moved to exclude all of
K.H.’s testimony and the trial court denied the motion.

The jury found appellant guilty of aggravated kidnapping and
aggravated sexual assault.  The jury
assessed punishment at five years in prison on the aggravated kidnapping in
trial cause number 1177027, which is appellate number 01-10-00138-CR.  The jury assessed punishment at twelve years in
prison on the aggravated sexual assault in trial cause number 1177028, which is
appellate number 01-10-00139-CR.  The
trial court ordered the sentences to run concurrently.

Violation of “The Rule”

In his first
issue, appellant argues that the trial court should have excluded K.H.’s
testimony because her conversation with Hayes violated the rule against
sequestration of witnesses.  The State
contends that K.H. and Hayes did not corroborate each other’s testimony and
that appellant’s nickname was not an issue bearing upon his guilt or innocence.

When the trial court
invokes “the rule,” it excludes witnesses from the courtroom pursuant to Texas Rule
of Evidence 614, which provides in relevant part:  “At the request of a party the court shall
order witnesses excluded so that they cannot hear the testimony of other
witnesses, and it may make the order of its own motion.”  Tex.
R. Evid. 614.  The purpose of the
rule is to prevent the testimony of one witness from influencing the testimony
of another.  Martinez v. State,
867 S.W.2d 30, 40 (Tex. Crim. App. 1993).

The trial court must invoke the rule if requested to do
so.  Tex.
R. Evid. 614. After the rule has been invoked, enforcement of the rule
is within the trial court’s discretion.  Guerra
v. State, 771 S.W.2d 453, 474–75 (Tex. Crim. App. 1988); Walker v. State,
2 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  A violation of the rule may not be relied
upon for reversal of the case unless it is shown that the trial court abused
its discretion by allowing the violative testimony.  Guerra, 771 S.W.2d at 474–75; Walker,
2 S.W.3d at 658.  

In determining whether the rule has been violated in
circumstances where a witness has personal knowledge of the offense and a party
clearly anticipated calling her to the stand, we consider (1) whether the
witness conferred with another witness without permission and (2) whether the
witness’s testimony corroborated the testimony of another witness for same side
on an issue of fact bearing upon the issue of guilt or innocence.  Cooks
v. State, 844 S.W.2d 697, 733 (Tex. Crim. App. 1992); Guerra, 771 S.W.2d at 476.  The
State clearly anticipated calling K.H. as a witness because she was the named
complainant in the indictment.  K.H.
conferred with Hayes without permission, and K.H. and Hayes were both State
witnesses.  The sole pertinent inquiry,
therefore, is whether K.H.’s testimony corroborated Hayes on an issue of fact
bearing upon the issue of guilt or innocence. 
Cooks, 844 S.W.2d at 733; Guerra, 771 S.W.2d at 476.

Appellant first contends that K.H. exhibited a “willingness
to alter her testimony.”  He suggests, as
he did at trial, that K.H. fabricated her testimony that appellant used a
condom in order to explain the lack of DNA evidence connecting appellant to the
offense.  Appellant also asserts that the
trial court abused its discretion by not permitting him to question Hayes about
her conversation with K.H. because if Hayes’s depiction of the encounter
differed from K.H.’s, the record “would more accurately reflect the extent of
the prejudice [K.H.’s] testimony posed to the defendant.”  Finally, appellant emphasizes K.H.’s
statement that Hayes “connected all the pieces to the dots.”  None of these assertions, however, pertains
to whether K.H.’s testimony corroborated Hayes’s or whether Hayes’s testimony
corroborated K.H.’s.

The only issues to which both Hayes and K.H. testified
concerned appellant’s nickname and the location of the Social Security cards
that K.H. took from the house where she was assaulted.  We must determine whether these facts bear
upon appellant’s guilt or innocence.  We
conclude that they do not.  K.H.
identified appellant from a photo array as one of the two men that assaulted
her, and identified him again in court.  T.E.
also identified appellant from a photo array and in court.  Hayes’s testimony established that appellant
was close friends with Carr, who had access to the car and the crime scene and was
a source of DNA found in K.H.’s sexual assault kit.  The trial court did not abuse its discretion
in concluding that neither the precision with which K.H. remembered appellant’s
nickname nor the precise location from which K.H. took the Social Security
cards that led police to her attackers were facts that bore on appellant’s
guilt or innocence.  See Cooks, 844 S.W.2d at 733.

We overrule appellant’s first issue.

Speedy Trial

In his second issue, appellant contends that the delay of
approximately 18 months between his arrest and the start of his trial violated
his right to a speedy trial.  He urges us
to apply the four-part balancing test set out by the United States Supreme
Court in Barker v. Wingo and to enter
an order of acquittal.  407 U.S. 514, 92
S. Ct. 2182 (1972).  The State responds
that a proper balancing of the Barker
factors shows appellant’s rights were not violated.

The right to a speedy trial is guaranteed by the Sixth
Amendment of the United States Constitution and is applicable to the states
through the Fourteenth Amendment.  Barker, 407 U.S. at 515, 92 S. Ct. at
2184; see U.S. Const. amends. IV, XIV. 
The Texas Constitution also guarantees a speedy trial, but Texas courts
apply the same Barker test for
speedy-trial analysis under state law as under federal law.  Harris
v. State, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992); see Tex. Const. art.
I, § 10; Tex. Code Crim. Proc. Ann.
art. 1.05 (West 2005).  The Barker test requires that the following non-exclusive
factors be balanced against each other to determine whether a defendant’s right
to a speedy trial has been violated:  (1)
the length of delay, (2) the reason for the delay, (3) appellant’s assertion of
his speedy-trial right, and (4) the prejudice to appellant from the delay.  Barker,
407 U.S. at 530, 92 S. Ct. at 2192; Shaw
v. State, 117 S.W.3d 883, 888–89 (Tex. Crim. App. 2003).

A trial court’s conclusion on the balancing analysis is a
purely legal question to be reviewed de novo on appeal.  Cantu
v. State, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008).  However, fact determinations made by the
trial court and on which the balancing test is performed are to be given the
deference generally afforded to such fact-findings.  Id.

Appellant was arrested on August 2, 2008.  On October 19, 2009, the State sought a
continuance so that DNA tests could be performed on the baby wipes that K.H.
used to clean herself after the assaulted. 
Appellant filed a motion asserting his right to a speedy trial on
January 21, 2010.  Nothing in our record
shows that the trial court heard the motion or ruled on it.  While the case was pending, appellant and the
State agreed to a number of trial date resets, the last of which was filed on
January 21, 2010.  Voir dire was held the
following month on February 5, and the jury trial began on February 9, 2010. 

Less than three weeks after he filed his motion, appellant’s
case went to trial.  This Court has held
that when a speedy trial motion results in a form of relief that appellant
requested, there is nothing for us to review. 
Cline v. State, 685 S.W.2d
760, 761–62 (Tex. App.—Houston [1st Dist.] 1985, no pet.); see also Hill v. State, 213 S.W.3d 533, 538 (Tex. App.—Texarkana
2007, no pet.).  However, even if we were
to assume that the trial court heard and impliedly denied his motion,
appellant’s speedy trial arguments fall short on the merits.  See
Hill, 213 S.W.3d at 538–39 (addressing dismissal even after finding that
trial court had granted relief requested by speedy trial motion).

The delay from appellant’s arrest to the beginning of his
trial was approximately 18 months.  In
general, delays approaching one year have been found to be presumptively
prejudicial under the first factor of the Barker
inquiry.  Shaw, 117 S.W.3d at 889. 
Where a delay is presumptively prejudicial, we then proceed to the
remaining Barker factors.  Id.  Because the delay here exceeds one year, we
conclude that the first Barker factor
is met.

 Regarding the second
factor that examines the reason for the delay, appellant contends that the
State’s request for continuance for additional DNA testing weighs in his favor.  To that end, he cites the trial testimony of
two State witnesses who indicated that the State first relied on the sexual
assault kit evidence alone for DNA testing and that only after tests on that
evidence failed to connect appellant to the crime, did the State submit the
baby wipes for DNA analysis.  We conclude
that the State bears some burden for the delay because it sought a continuance
for further DNA testing but that appellant also acquiesced in this delay by
agreeing to reset the case.  See Ervin v. State, 125 S.W.3d 542,
546–47, 549 (Tex. App.—Houston [1st Dist.] 2002, no pet.).  The second Barker factor weighs neither in favor of nor against a finding of a
violation of appellant’s right to a speedy trial.

Under the third Barker factor,
the failure of a defendant to assert his right makes it difficult to establish the
denial of that right.  Dragoo v. State, 96 S.W.3d 308, 314
(Tex. Crim. App. 2003).  A defendant’s
lack of a timely demand for a speedy trial indicates that he does not really
want one.  Id.  Further, the longer a
trial is delayed, the greater the likelihood that a defendant who wanted a
speedy trial would take action to obtain it. 
Id.  Here, appellant did not assert his right to a
speedy trial until 16 months after he was arrested.  Additionally, he acquiesced in any delay by
agreeing to a number of trial resets.  See Ervin, 125 S.W.3d at 546–47,
549.  Because of appellant’s
participation in the delay of his trial and his inaction in asserting his
speedy-trial rights, we conclude that the third Barker factor weighs heavily against appellant.

In the final Barker
factor—prejudice to appellant—we consider the interests that the speedy trial
right is intended to protect:  (1) preventing
oppressive pretrial incarceration, (2) minimizing the defendant’s anxiety and
concern, and (3) limiting the possibility that the defendant’s defense will be
impaired.  Shaw, 117 S.W.2d at 891.  The
third interest is the most serious because the inability of a defendant to
adequately prepare his case affects the fairness of the entire criminal justice
system.  Id.  Proof of prejudice is
not essential “because excessive delay presumptively compromises the
reliability of a trial in ways that neither party can prove or even identify.”  Id.  However, the presumption of prejudice is
countered by the defendant’s acquiescence in the delay.  Id.

Here, appellant emphasizes inconsistencies in the testimony
of K.H. and T.E., attributes these inconsistencies to the delay in his trial,
and contends that his defense was thereby impaired.  He also asserts that he was oppressively
incarcerated because although he complied with police “at all times,” he was
repeatedly denied bond reductions.  Appellant,
however, agreed to all of the trial resets, which also worked to his benefit as
the DNA tests conducted during the delay proved that his DNA did not match the
DNA in evidence recovered at the scene of the crime.  On the present record, we cannot discern any
evidence, argument, or information that demonstrates prejudice.  We conclude that the fourth Barker factor weighs against appellant.

Balancing the Barker
factors, we conclude that appellant’s acquiescence in the delay of his trial overwhelms
the other three factors.  Appellant
repeatedly agreed to trial resettings and asserted his right to a speedy trial only
two-and-a-half weeks prior to trial.  Any
fault attributable to the State because of its motion for a continuance for
further DNA testing is subsumed by appellant’s failure to oppose the motion and
his immediate agreement to a resetting. 
We hold that the Barker test
shows that appellant’s right to a speedy trial was not violated.  See
Celestine v. State, No. 14-08-00766-CR, 2009 WL 3365893, at *3 (Tex.
App.—Houston [14th Dist.] Sept. 10, 2009, no pet.).

We overrule appellant’s second issue.

Conclusion

We affirm the judgment of the trial court.

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel
consists of Justices Jennings, Alcala, and Sharp.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           407
U.S. 514, 92 S. Ct. 2182 (1972).