NO. 07-10-0255-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 14, 2011
_____

JIMMY ESPINOZA,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2002-438,658; HONORABLE CECIL G. PURYEAR, PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Jimmy Espinoza was convicted of indecency with a child after pleading guilty to the offense. On appeal, he argues that the indictment should have been dismissed since he allegedly was denied a speedy trial. We disagree and affirm the judgment.

The right to a speedy trial encompasses not only the mere right to speed but an "orderly expedition" of the charge. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459-60, 30 L.Ed.2d 468 (1971); *State v. Munoz,* 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). In determining whether both were afforded, four factors must be balanced

which factors consist of 1) the length of the delay, 2) the reason for the delay, 3) the time at which the defendant asserted the right, and 4) the prejudice, if any, suffered by the defendant due to the delay.  *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 116-17 (1972); *Johnson v. State,* 954 S.W.2d 770, 771 (Tex. Crim. App. 1997). If there is no undue delay, the court has no reason to address the remaining three factors. *State v. Munoz,* 991 S.W.2d. at 821.  Finally, in reviewing the trial court's denial of the motion to dismiss for lack of a speedy trial, we defer to the trial court on matters involving the resolution of historical facts, but apply the law to the four factors *de novo.  Johnson v. State,* 954 S.W.2d at 771.

*Length of Delay*

Appellant was indicted on January 9, 2002, and did not go to trial until 2010. Given that the seventeen-month delay in *Munoz* was sufficiently prejudicial to trigger consideration of the remaining three factors, we deem the seven to eight-year delay sufficient to do so here.

*Reason for the Delay*

The reason for the delay does not appear in the record; apparently, the matter "slipped through the cracks."  Though an unacceptable explanation and one that should be avoided, it happens.  And, while this does not bode well for the State, appellant did not contend that the prosecutor was responsible for it.[1]  So the factor, while favoring appellant, does not weigh heavily against the State.[2]  *Murphy v. State,* 280 S.W.3d 445,

---

[1]Counsel stated at the hearing: ". . . I know the State didn't have any control over this, so I'm not saying they're bad guys."

[2]The State did file one motion for continuance in April 2010, because of the unavailability of a witness for trial.

453 (Tex. App.–Fort Worth 2009, pet. ref'd) (stating that the lack of an explanation for the delay weighs against the State but not greatly when there is no evidence that the prosecutor purposefully engaged in dilatory tactics)*.*

*Assertion of Right*

Appellant filed a request for appointment of counsel on February 6, 2002. Nothing in that document mentions a request for a speedy trial. Appellant then sent the court a letter dated January 2, 2003, in which he expressed concern about a detainer against him out of Lubbock County. He further stated: "It is my interst [sic], and request, that county officials bench warrant me before the court to face proceedings if necessary, in that so my defense is not further impinged upon." Additionally, a handwritten notation on the January 2003 letter indicates that it was filed by the clerk with no action by the court. And though appellant testified at the hearing that he wanted a speedy trial, there was no further communication between him and the court until September 2, 2009. On the latter date, he again sought the appointment of counsel. That letter made no mention of a request for a speedy trial, however. And, counsel was appointed for him on December 17, 2009. Next, rather than demand a trial, appellant filed his motion to set aside the indictment for failure to provide him a speedy trial on May 19, 2010. This suggests that appellant initially intended to timely address the accusation, but the intent waned. One viewing these circumstances could reasonably deduce that appellant was less than diligent in asserting his right to a speedy trial. *See McIntosh v. State*, 307 S.W.3d 360, 368 (Tex. App.–San Antonio 2009, pet. ref'd) (stating that the defendant has the burden to show he acted diligently in pursuing his right to a speedy trial).

3

*Prejudice*

A speedy trial is designed to protect the interests of 1) preventing oppressive pretrial incarceration, 2) minimizing the anxiety and concern of the accused, and 3) limiting the chance that the accused's defense will be impaired. *State v. Munoz,* 991 S.W.2d at 826. The last of these factors is the most important since the ability to adequately defend oneself affects the fairness of the legal system. *Id.*

We note that appellant was incarcerated throughout the period between indictment and conviction. Yet, the loss of his liberty was due to a previous conviction for burglarizing a habitation and the attendant sentence of twenty-five years imprisonment. So, it cannot be said that any delay in prosecuting the indictment underlying this appeal exposed him to any oppressive pretrial incarceration. *See Hill v. State,* 213 S.W.3d 533, 541 (Tex. App.–Texarkana 2007, no pet.) (concluding that the factor weighed against the accused when he was already incarcerated on another charge).

Being already incarcerated also tends to minimize any complaint about the delay causing appellant to suffer anxiety about or concern for the loss of his liberty. And, aside from the allegations that his ability to gain parole, enjoy educational benefits, or receive some type of elevated prisoner status were affected, nothing of record suggests that the delay caused him any other type of mental or physical anxiety or concern.

As for the parole issue, appellant failed to illustrate what the parole laws were and how a pending charge for indecency with a minor would affect his ability to be paroled. In fact, the only parole hearing he mentioned at which the indecency charge was broached occurred in 2001, according to appellant. Apparently, there was no

4

mention of the offense by the parole committee once appellant was indicted a year later in 2002. This scenario tends to suggest that the committee cared more about an offense before it was formally charged than after, which, in turn, seems rather illogical and renders appellant's testimony a bit suspect. And, if the topic is not broached again, one could think that the charge had little impact upon his remaining in prison, assuming *arguendo* that his conduct while imprisoned and prior convictions rendered him subject to parole. And, as for the impact of the charge on appellant's prisoner status and educational opportunities, nothing of record describes the particular levels available or the criteria for securing a better status or attending classes. Nor did appellant proffer evidence of his conduct while in prison from which one could begin to infer that he would have garnered better treatment but for the pending criminal charge. Simply put, all depended upon the credibility of the witness involved, *i.e.* appellant, and the trial court had the option to find him not credible, especially given the conclusory nature of the testimony.

Finally, appellant claims that the delay impaired his ability to secure various witnesses to assist in his defense. Yet, the evidence regarding their availability is mixed at best; its tenor did not obligate the trial court to find that they were unavailable. Moreover, appellant failed to develop the nature of the testimony that those witnesses purportedly would utter. Nor did he illustrate, or attempt to illustrate, that it would favor him in any way. Given this deficiency, one would only be guessing if he was to conclude that the supposed absence of the witnesses prejudiced appellant. *See Harrison v. State,* 282 S.W.3d 718, 722 (Tex. App.–Amarillo 2009, no pet.) (stating that to show prejudice due to the unavailability of a witness, the defendant must provide

5

proof that the witness would have benefited the defense). This seems especially so when the accused (who previously suggested that witnesses were needed to help prove his innocence) eventually admitted his culpability and pled guilty to the charge, like appellant.

In sum, we are troubled by the delay between indictment and trial (or guilty plea as the case may be), here. Yet, it must be remembered that appellant was already in prison for committing some other felony. Thus, the impact upon his liberty wrought by awaiting trial was questionable at best. It is difficult to lose what you do not have. And, after consideration of all the *Barker* factors, we cannot say that the efficacy of the process itself was impugned to such an extent that dismissal of the indictment was warranted. Accordingly, the issue is overruled and the judgment is affirmed.

Brian Quinn
Chief Justice

Do not publish.