

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00092-CR

**PAUL KEVIN MCGOWN,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 40th District Court
Ellis County, Texas
Trial Court No. 35540CR**

## MEMORANDUM  OPINION

In six issues, appellant, Paul Kevin McGown, challenges his conviction for assault (family violence) by occlusion, a third-degree felony that was enhanced under the habitual-felony-offender statute. *See* TEX. PENAL CODE ANN. § 12.42 (West Supp. 2012); *see also id.* § 22.01(a)(1), (b)(2)(B) (West 2011). We affirm.

### I.     BACKGROUND

This appeal pertains to an altercation that transpired between appellant and his wife at the time, Candace Sellers. According to her testimony, Sellers recalled that, on

December 14, 2010, she received a telephone call from a neighbor while she was at work in Dallas, Texas. The neighbor informed Sellers that appellant had broken into Sellers's house in Palmer, Texas. Apparently, appellant has just been released on parole that morning. Sellers testified that she and appellant were estranged, though technically married. She indicated that she had sent appellant a letter stating that she wanted a divorce. Nevertheless, after receiving the neighbor's telephone call, Sellers called the Palmer police. Police told Sellers that they could not remove appellant from the house because appellant and Sellers were still married. Police did say, however, that they would assist Sellers in removing appellant if Sellers asked appellant to leave and he refused to do so. Sellers headed to the house in Palmer. On her way, she called appellant's mother and requested that she come get appellant.

What happened once Sellers arrived at the house is hotly contested. Sellers testified that when she arrived at the house, the back screen door was locked from the inside. Because the back screen door was locked, Sellers knocked and asked appellant to come outside. Sellers recounted that appellant opened the door and subsequently "grabbed [her] arm and yanked [her] inside the house and slammed the door." Next, appellant allegedly pushed Sellers against the refrigerator and grabbed her cell phone. According to Sellers, appellant broke the cell phone in two and "threw it down the length of the kitchen." Appellant then yanked Sellers's hair, causing her to fall. While she was on the ground, appellant kicked her. After kicking Sellers, appellant cursed at

Sellers and told her that he was eating dog food while she was "out doing [her] thing."[1] Sellers got up and tried to get outside, but appellant grabbed her arms and shoved her into an end table near the back door. He then turned Sellers around and proceeded to stick two fingers in her mouth, grab her lower teeth, and pull her towards him. Sellers recounted that appellant "then shoved me back with his fingers into the stove and I hit my head." Subsequently, appellant put his hands around Sellers's neck and started to apply pressure. Sellers tried to grab appellant's hand, but she started to feel dizzy; her eyes started to water; and she thought she was going to die. Sellers asserted that she could not breathe at this time, though she recalled hearing appellant state that she "was never going to see the light of day again." Due to the pressure applied by appellant, Sellers slumped to the ground, and appellant stepped over her and walked away.

Eventually, Sellers was able to exit out the back door and run away. However, in doing so, Sellers "rolled off the porch and fell on [her] knees." Thereafter, Sellers flagged down a car that was passing by. The driver of the vehicle took Sellers to the police station, and one of the passengers of the car assisted Sellers with walking into the police station.

Jayne Gallagher, a secretary at the Palmer Police Department, stated that she was present when Sellers entered the police station. According to Gallagher, Sellers "was in a very frantic, terrified mode." Sellers kept saying that appellant was trying to kill her.

---

[1] In his testimony, appellant admitted that he was upset because Sellers allegedly neglected him while he was in jail.

Sellers was coughing, out of breath, and felt like she was going to faint. Gallagher sat with Sellers until an emergency medical technician arrived a few minutes later.

Neil Moore, a first responder and volunteer fire fighter, evaluated Sellers. Moore noticed that Sellers was "very anxious," "breathing very rapidly," crying, and very upset. Sellers indicated to Moore than her neck was hurting. Moore observed redness to the front of Sellers's throat and around her cheeks. Moore also observed "a small laceration to the back of her throat, probably two to three millimeters in length." Moore testified that the laceration was fresh; that it had just stopped bleeding; and that Sellers's throat was swollen. When Moore asked about her neck, Sellers noted that "the back of her throat was real scratchy and she felt like she had been swallowing blood." Several pictures of Sellers were admitted into evidence. These pictures showed dark bruises on numerous parts of Sellers's body, especially her neck, arms, and torso.

Thereafter, officers arrested appellant at the house. Sellers later returned to the house accompanied by another police officer—Corporal Isidro Lopez. Corporal Lopez recalled that Sellers was shaking, scared, and upset that day. He also recalled that Sellers had red markings around her neck. After arriving at the house, Corporal Lopez escorted Sellers inside and observed Sellers's cell phone ripped apart and submerged in water in the bathroom sink.[2]

Appellant testified in his own defense. Appellant recounted that he had been in jail from early 2010 until December 14, 2010. Upon release, he walked to the house in

---

[2] Appellant admitted submerging Sellers's cell phone in the bathroom sink once she left.

Palmer, fixed himself something to eat, and went to sleep. Appellant claimed that he had packed up all of his property and that he was at the house to ask Sellers for the keys to his car. According to appellant, when Sellers arrived at the house, she showed him his keys, threw her cell phone at him, and ran out the door. Appellant denied threatening Sellers or touching her in any way. In fact, he denied causing any of Sellers's injuries depicted in the pictures admitted into evidence. He also explained that Sellers has muscular dystrophy and that she takes medication, methotrexate, to treat the disease.[3] Finally, appellant discussed his numerous prior convictions but emphasized that he has no convictions for assaulting anyone.

At the conclusion of the evidence, the jury found appellant guilty of assault (family violence) by occlusion. *See id.* § 22.01(a)(1), (b)(2)(B). During the punishment phase, appellant pleaded true to the two enhancement paragraphs contained in the indictment, which referenced appellant's prior convictions for felony possession of a controlled substance and felony burglary of a vehicle. Subsequently, the jury assessed punishment at thirty-five years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court ordered that this imposed sentence begin when the judgment and sentence associated with appellant's 1992 burglary-of-a-vehicle case in Dallas County, Texas, ceases to operate.[4] The trial court also certified appellant's right of appeal, and this appeal followed.

---

[3] Sellers testified that she is 5'7" and weighs 120 pounds, whereas appellant is 6'1" and weighs about 170 to 180 pounds.

[4] Specifically, the trial court's judgment states that:

## II.   EXTRANEOUS-OFFENSE EVIDENCE

In his third issue, appellant complains about testimony adduced regarding appellant's involvement in a purported insurance scam.   Appellant contends that evidence of this incident constituted improper extraneous-offense evidence that affected his substantial rights and had a substantial and injurious influence on the jury's verdict.

During cross-examination of Sellers, appellant's counsel asked whether Sellers had gone to appellant's mother's house while appellant was in jail.  Sellers responded that she had been to appellant's mother's house a couple of times while appellant was in jail.  In the following exchange, appellant's counsel asked about a specific time in which Sellers went to appellant's mother's house accompanied by a police investigator:

| Q [Appellant's counsel]: | Who did you go with? |
|---|---|
| A [Sellers]: | One time with my sister, and the other time with Investigator Jiminez. |
| Q: | And what were you doing over there with Investigator Jiminez? |
| A: | Recovering a stolen car. |
| Q: | And you didn't ever go over there with Robert? |
| A: | Who is Robert? |

---

**IT IS FURTHER ORDERED BY THE COURT THAT THE PUNISHMENT UNDER THE SENTENCE HERE IMPOSED SHALL BEGIN WHEN THE JUDGMENT AND SENTENCE AGAINST THIS DEFENDANT IN CAUSE NO. 9204927-N, IN THE 195 TH DISTRICT COURT OF DALLAS COUNTY, TEXAS, WHEREIN THE DEFENDANT WAS ON THE 31ST DAY OF DECEMBER, 1992, DULY AND LEGALLY SENTENCED TO A TERM OF 35 YEARS FOR THE OFFENSE OF BURGLARY OF [A] VEHICLE SHALL HAVE CEASED TO OPERATE.**

(Emphasis in original).

Q: Robert is the gentleman that mows your yard.

A: No. I don't have anyone who mows my yard by the name of Robert.

Q: Robert Green?

A: No, sir.

Q: And you don't have a dating relationship with Robert Green?

A: I don't know who that is.

On re-direct, the State questioned Sellers about the purported insurance scam. Apparently, appellant had stolen a friend's car so that the friend could file an insurance claim. Sellers explained that she eventually found out about the insurance scam and informed appellant about her knowledge of the event. She further testified that the scam was one of the reasons why she told appellant that the marriage was over.

In any event, the record does not indicate that appellant objected to any of the testimony provided by Sellers regarding the stolen car and insurance scam. To preserve error, Texas Rule of Appellate Procedure 33.1(a) requires the complaining party to make a specific objection or complaint and obtain a ruling thereon before the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). This requirement ensures that trial courts are provided an opportunity to correct any error "at the most convenient and appropriate time—when the mistakes are alleged to have been made." *Hull v. State*, 67 S.W.3d 215, 216 (Tex. Crim. App. 2002). Because appellant did not object to Sellers's testimony about the stolen car and insurance scam, we cannot say that this error has been preserved. *See* TEX. R. APP. P. 33.1(a); *see also*

*Wilson*, 71 S.W.3d at 349. And even if we were to conclude otherwise, we note that the Texas Court of Criminal Appeals has stated that appellant "cannot complain of testimony he first elicited on cross-examination." *See Ingham v. State*, 679 S.W.2d 503, 507 (Tex. Crim. App. 1984); *see also Christ v. State*, 480 S.W.2d 394, 397 (Tex. Crim. App. 1972). Accordingly, we overrule appellant's third issue.

### III. THE STATE'S CLOSING ARGUMENT

In his first issue, appellant argues that the State injected new and unsupported facts during its closing argument for the guilt-innocence phase. In particular, appellant complains about the State's mentioning that Sellers has "no convictions" when discussing with the jury the judging of the credibility of witnesses. For context, we recite the following statements made by the State in its closing argument, which includes the complained-of statement:

[The State]: And as he's choking her he says, you're not going to see the light of day again. You know, Candace Sellers, you've seen her, five seven, 118 pounds. This defendant, six one, 180 pounds. She is no match for him. She's no match. He knew about her muscular dystrophy. He knew about that.

He knew that she couldn't fight him. She couldn't stand a chance against him. And yet, what he wants today is to not be accountable for anything. And [defense counsel] wants you to believe that he is not violent. What do you think a robbery is? Robbery. That's violent.

You know, you get to judge his testimony the same as everybody else. Who has a criminal history? He does. Who's on parole, who was sentenced to 35 years in 1992? Got out in seven years. Still on parole, and yet still committing crimes? He is. You have Candace Sellers, no convictions. She's working hard, taking care of herself and

her two dogs. Who do you believe? Whose story makes more sense?

At the outset of our analysis of this issue, we note that appellant did not object to the State's closing argument. As stated earlier, to preserve error, Texas Rule of Appellate Procedure 33.1(a) requires the complaining party to make a specific objection or complaint and obtain a ruling thereon before the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Because appellant did not object to the State's closing argument, we conclude that appellant has failed to preserve this issue for review. *See* TEX. R. APP. P. 33.1(a); *see also Wilson*, 71 S.W.3d at 349.

However, even if appellant had preserved this issue, we believe that the State's comment about Sellers's lack of convictions constituted proper jury argument as a reasonable deduction from the evidence or as an answer to opposing counsel's argument. *See Brown v. State*, 207 S.W.3d 564, 570 (Tex. Crim. App. 2008) (stating that proper jury argument must encompass one of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement); *Lagrone v. State*, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997) (same). The record reflects that appellant testified about his criminal history to highlight the fact that his offenses were non-violent. Essentially, to bolster his credibility, appellant put his criminal history at issue. Sellers also testified. Appellant did not impeach her with any convictions. Because this case centered on the credibility of appellant and Sellers, and because

appellant put his criminal history at issue to bolster his credibility and did not impeach Sellers with any convictions, the State's comment on Seller's lack of convictions is a reasonable inference from the evidence and an answer to opposing counsel's argument that Sellers's account is unbelievable. *See Brown*, 207 S.W.3d at 570; *see also Lagrone*, 942 S.W.2d at 619. Accordingly, even if appellant had preserved this issue, we do not believe that the State's closing argument was extreme or manifestly improper or injected new and harmful facts into evidence so as to constitute reversible error. *See Shannon v. State*, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996); *see also Brown*, 270 S.W.3d at 570 ("Consequently, error exists when facts not supported by the record are injected in the argument, but such error is not reversible unless, in light of the record, the argument is extreme or manifestly improper."). We therefore overrule appellant's first issue.

## IV. THE JURY CHARGE

In his second issue, appellant contends that assault by occlusion is a result-oriented offense and that the jury charge improperly includes full statutory definitions of intent. Though he did not object to the charge in the trial court, appellant asserts that the inclusion of the full statutory definitions of intent caused him egregious harm.

### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was

properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

Appellant admits that he did not object to the jury charge, nor did he request alternative definitions for the culpable mental states in this case; thus, he must show egregious harm. *See Almanza*, 686 S.W.2d at 171. In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

**B.    Discussion**

At the outset, we note that article 36.14 of the Texas Code of Criminal Procedure provides that the trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). In doing so, the abstract portion of the charge included the definitions of "intentionally," "knowingly," and "recklessly," as defined in section 6.03 of the Texas

Penal Code.[5] *See* TEX. PENAL CODE ANN. § 6.03(a)-(c) (West 2011). Appellant argues that the inclusion of these definitions in their entirety was erroneous because assault by occlusion is a result-oriented offense and the inclusion of "nature of conduct" language was clearly erroneous and caused him egregious harm.

In an assault-by-occlusion case, this Court has stated that assault with bodily injury is a "result-of-conduct" offense. *See, e.g., Morgan v. State*, Nos. 10-10-00367-CR & 10-10-00371-CR, 2011 Tex. App. LEXIS 8133, at **10-11 (Tex. App.—Waco Oct. 12, 2011, no pet.) (mem. op., not designated for publication) (citing *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008)). Therefore, it would appear that the jury charge erroneously included both "nature-of-conduct" and "result-of-conduct" language with regard to the culpable mental states.

However, based on our review of the record, we cannot say that appellant was egregiously harmed by this error. As mentioned earlier, because he did not object,

---

[5] In fact, the charge provided the following definitions for "intentionally," "knowingly," and "recklessly," all of which mirror those prescribed in section 6.03 of the Texas Penal Code:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

> A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(a)-(c) (West 2011).

appellant is not entitled to a reversal unless he was egregiously harmed by those definitions. *See Almanza*, 686 S.W.2d at 171. And among the aforementioned items that factor into an egregious-harm analysis, we may also consider the degree, if any, to which the culpable mental states were limited by the application portion of the jury charge. *See Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296 (Tex. Crim. App. 1994); *Cook v. State*, 884 S.W.2d 485, 492 (Tex. Crim. App. 1994); *see also Olivas*, 202 S.W.3d at 144.

In this case, although the trial court gave the full statutory definitions of the culpable mental states in the abstract portion of the charge, the trial court limited the scope of the definitions in the application paragraph pertaining to the alleged conduct:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 14th day of December, 2010, in Ellis County, Texas, the defendant, PAUL KEVIN MCGOWN, *did then and there intentionally or knowingly or recklessly cause bodily injury to Candace Sellers*, a member of the defendant's family, as described by Section 71.003, Family Code, *by intentionally or knowingly or recklessly impeding the normal breathing or circulation of the blood of the said Candace Sellers by applying pressure to the throat or neck of the said Candace Sellers*, then you will find the defendant guilty as charged in the indictment.

(Emphasis added). Thus, the jury was instructed that it could convict appellant of assault by occlusion only if it found that he had intentionally, knowingly, or recklessly caused bodily injury to Sellers by applying pressure to Sellers's throat or neck, thereby impeding her normal breathing or circulation of blood. This is consistent with the statutorily-prohibited conduct. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(2)(B). When the application paragraph correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm. *See Patrick*, 906 S.W.2d at 493;

*Hughes*, 897 S.W.2d at 296-97; *Pitre v. State,* 44 S.W.3d 616, 621 (Tex. App.—Eastland 2001, pet. ref'd).

Furthermore, intent was not a contested issue at trial. Appellant's defense was not that he had accidentally choked Sellers or that he lacked the requisite mens rea to commit the charged offense. Instead, appellant denied that the incident even occurred, and his theory during the trial was that Sellers fabricated the story. Consequently, throughout trial and during closing arguments, the parties focused on the credibility of appellant and Sellers, not on whether appellant possessed the culpable mental state required to commit the offense.

Accordingly, on this record, we cannot conclude that the alleged charge error affected the very basis of the case, deprived appellant of a valuable right, vitally affected appellant's defensive theory, or made a case for conviction clearly and significantly more persuasive. *See Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) ("Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'"). Because we cannot say that the alleged error in the jury charge egregiously harmed appellant, we overrule appellant's second issue. *See Patrick*, 906 S.W.2d at 493; *Hughes*, 897 S.W.2d at 296-97; *see also Pitre*, 44 S.W.3d at 621.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

In his fourth issue, appellant asserts that his trial counsel was ineffective. We disagree.

## A.    Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient presentation was prejudicial and resulted in an unfair trial.  *Id.*  To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable.  *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).  To satisfy the second prong, appellant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Thompson*, 9 S.W.3d at 812.  A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).

Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance.  *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.  The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight.  *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983).  Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record.  *Thompson*, 9

S.W.3d at 813. Trial court counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). In the absence of a record of trial counsel's reasons for the challenged conduct, a court will not conclude that counsel was ineffective unless "the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). For this reason, "[a] substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal." *Thompson*, 9 S.W.3d at 813.

## B. Discussion

Here, appellant complains that his trial counsel was ineffective because he failed to object to the State's closing argument and the jury charge, he introduced appellant's criminal history into evidence, and because he failed to obtain a medical expert to explain Sellers's injuries. In analyzing this complaint, we first note that the record is silent as to trial counsel's reasons for not taking the actions proposed by appellant on appeal. To conclude that trial counsel was ineffective based on a silent record would call for speculation, which we will not do. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *see also Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Further, the Texas Court of Criminal Appeals has stated that for a defendant to prevail on an ineffective assistance of counsel claim based on the failure to object, the defendant must first show that the trial court would have committed error to overrule the objection. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996).

Because we have overruled appellant's issue pertaining to the State's closing argument, we cannot say that appellant has met his burden in demonstrating that the trial court would have committed error to overrule the objection. *See id.* Moreover, the record is silent regarding trial counsel's decision to not object to the jury charge or call a medical expert to testify about Sellers's injuries. And finally, we cannot say that trial counsel's decision to introduce appellant's criminal history into evidence was so outrageous that no competent attorney would have engaged in it. *See Roberts*, 220 S.W.3d at 533; *see also Garcia*, 57 S.W.3d at 440. As was clear from his closing argument, appellant's counsel introduced appellant's criminal history to bolster appellant's credibility by showing that his prior convictions were non-violent and to show that appellant did not commit this violent act against Sellers.

Based on the foregoing, we cannot conclude that appellant has overcome the presumption that trial counsel's representation was reasonably professional and motivated by sound trial strategy. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813; *see also Gamble*, 916 S.W.2d at 93. Accordingly, we overrule appellant's fourth issue.

## VI.    "THE RULE"

In his fifth issue, appellant contends that the trial court erred in accepting the testimony of a witness, Alan Purcell, who violated Texas Rule of Evidence 614 by being present in the courtroom during the cross-examination of Sellers. *See* TEX. R. EVID. 614.

At the beginning of trial, defense counsel invoked the Rule. *See id.* In response to this request, the trial court swore in a witness who was in the courtroom, Karen

Cannon, and instructed her regarding the Rule. However, appellant's complaint in this issue pertains to the testimony of Purcell, Sellers's brother, during the punishment phase of trial.

At the punishment phase, appellant testified in his own behalf, and the State called Sellers in rebuttal. During the cross-examination of Sellers, defense counsel asked Sellers to introduce her family members that were present in the courtroom. Sellers introduced Purcell and her sister-in-law. Defense counsel then asked Sellers about the relationship between appellant and her family.

The State called Purcell to testify. In response to questions from the State, Purcell admitted that he was in the courtroom while Sellers testified during the punishment phase and that Sellers answered the questions truthfully. At no point did appellant object to Purcell's testimony in the trial court.

As stated several times in this memorandum opinion, to preserve error, Texas Rule of Appellate Procedure 33.1(a) requires the complaining party to make a specific objection or complaint and obtain a ruling thereon before the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Because appellant did not object to the State's closing argument, we conclude that appellant has failed to preserve this issue for review. *See* TEX. R. APP. P. 33.1(a); *see also Wilson*, 71 S.W.3d at 349. And even if he had preserved this issue, we do not believe that the trial court abused its discretion in admitting Purcell's testimony. *See Phillips v. State*, 64 S.W.3d 458, 460 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("When, as here, the witness was one who had no connection with either the State's or the defendant's

case in chief and was not likely to be called as a witness because of a lack of personal knowledge regarding the offense, the trial court does not abuse its discretion in allowing the testimony." (citing *Guerra v. State*, 771 S.W.2d 453, 476 (Tex. Crim. App. 1988)); *see also Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd). We therefore overrule appellant's fifth issue.

## VII.    STACKING OF APPELLANT'S SENTENCES

In his sixth and final issue, appellant argues that the trial court erred in stacking his sentence in this case with his prior sentence for burglary of a vehicle.

## A.    Applicable Law

By statute, the trial court has the discretion to order sentences for a defendant who has been convicted in two or more cases to:  (1) run concurrently, or (2) cumulate, or "stack," the second and subsequent sentences—that is, being when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate. TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (West Supp. 2012); *see Smith v. State*, 575 S.W.2d 41, 41 (Tex. Crim. App. 1979) ("Normally, the trial judge has absolute discretion to cumulate sentences."); *see also Guillory v. State*, No. 03-10-00184-CR, 2010 Tex. App. LEXIS 8154, at *3 (Tex. App.—Austin Oct. 6, 2010, no pet.) (mem. op., not designated for publication).  We review a trial court's decision under article 42.08(a) for an abuse of discretion. *See Nicholas v. State*, 56 S.W.3d 760, 764-65 (Tex. App.—Houston [14th Dist.] pet. ref'd).  A trial court abuses its discretion when it imposes a sentence that is not in compliance with the law.  *See id.*  In other words, so long as the law authorizes cumulative sentences, the trial court acts within its discretion when it stacks sentences.

**B.     Discussion**

Here, the indictment charged that appellant had been convicted of two prior felonies, including burglary of a vehicle that occurred on December 31, 1992. During the punishment phase, appellant explained that he received a thirty-five-year prison sentence for his 1992 conviction for burglary of a vehicle. However, he also noted that he was released on parole for that offense in 1999. After the jury assessed punishment and was excused, the State moved to cumulate the sentence imposed in this case with the sentence imposed in the 1992 burglary-of-a-vehicle case. Appellant objected, but the trial court ultimately ordered that the sentence imposed in this case would "run consecutive" to the sentence imposed in the 1992 burglary-of-a-vehicle case.

On appeal, appellant argues that the trial court could not add a cumulation order to an already-imposed sentence for which appellant has suffered a portion of his punishment. While comparing his parole to community supervision, appellant likened the cumulation order in this case to a Double-Jeopardy violation.

First, we do not believe that appellant's parole is akin to being on community supervision. Therefore, to the extent that appellant's authority relies on such a comparison, we do not find that case to be persuasive. *See Worthington v. State*, 38 S.W.3d 815, 816 (Tex. App.—Houston [14th Dist.] 2001), *rev'd on other grounds*, 67 S.W.3d 191 (Tex. Crim. App. 2001). Furthermore, Texas courts have held that a trial court has authority to stack a new sentence onto a prior sentence for which the defendant is then on parole, which is the case here. *See Hill v. State*, 213 S.W.3d 533, 538 (Tex. App.—Texarkana 2007, no pet.) ("A trial court has the authority to stack a new sentence onto a

prior sentence for which the defendant is then on parole."); *Wilson v. State*, 854 S.W.2d 270, 273 (Tex. App.—Amarillo 1993, pet. ref'd); *Jimenez v. State*, 634 S.W.2d 879, 881 (Tex. App.—San Antonio 1982, pet. ref'd) (holding that article 42.08 authorizes stacked sentences for defendants on parole and that parole is "essentially a constructive confinement" and not a release from the operation of the judgment); *see also Sanchez v. State*, No. 02-11-00018-CR, 2012 Tex. App. LEXIS 478, at *6 (Tex. App.—Fort Worth Jan. 19, 2012, no pet.) (mem. op., no designated for publication). Because the trial court had authority to stack the sentence imposed in this case onto the sentence imposed in the 1992 burglary-of-a-vehicle case, we cannot say that the trial court abused its discretion. *See Nicholas*, 56 S.W.3d at 764-65. As such, we overrule appellant's sixth issue.

## VIII. CONCLUSION

Having overruled all of appellant's issues, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 26, 2013
Do not publish
[CRPM]